**Opinion issued July 15, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00906-CR

———————————

**JOSEPH BENJAMIN THORN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1357649**

---

## MEMORANDUM OPINION

The trial court found appellant, Joseph Benjamin Thorn, guilty of the felony

offense of evading arrest, or detention, and causing serious bodily injury.[1]  After

---

[1]    *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(B) (Vernon Supp. 2013).

appellant pleaded true to the allegations in two enhancement paragraphs that he had previously been twice convicted of felony offenses, the trial court assessed his punishment at confinement for 35 years. In two issues, appellant contends that the evidence is factually insufficient to support his conviction and legally and factually insufficient to establish that he is a habitual offender.

We modify the trial court's judgment and affirm as modified.

## Background

The complainant, Artemio Pariona, testified that on August 14, 2012, while he was resting in his bedroom and his daughter was resting in her bedroom, he heard tires screeching loudly and then the impact of a car hitting his home. The complainant "suddenly . . . felt the impact from behind [his] bed," and he was "pushed . . . to the wall." He felt his legs and back breaking, causing him severe pain, and he could not breathe. The complainant then lost consciousness, and he remained unconscious in a coma for two months.

The complainant further testified that he has since had seven surgeries, and he is disabled. As a result of the collision, his knees were broken, his ribs were broken, his spine was injured, one of his legs remains completely numb, he cannot lift anything, and cannot walk very well or run. The complainant no longer has the normal use of his legs, and he cannot bend his back.

2

Houston Police Department ("HPD") Officer M. Alva testified that on August 14, 2012, he was dispatched to investigate a "911 hang-up" call placed from a coin-operated telephone at a shopping center at Long Point Road and Wirt Road. He was wearing his police uniform and drove to the location in his patrol car, which was marked with police emblems and had overhead lights.

Upon his arrival, Officer Alva noted that there were two coin-operated telephones in the shopping center. He drove to the first phone, but "[n]o one was around." He then drove to the second phone, where he stopped his car, and two women ran towards his car. Alva rolled down his window, and the women pointed to a Nissan car, which was parked perpendicular to the other cars in the parking lot. They told Alva: "'That man is breaking into that car.'" Alva told the women to wait there, and as he proceeded to make a u-turn in the parking lot, the Nissan "screeched off through the parking lot." Alva then activated his emergency equipment, which consisted of a siren and overhead flashing red, blue, and white lights, and the Nissan exited the parking lot. Alva explained that he intended to detain the individual in the Nissan to investigate.

Officer Alva pursued the Nissan eastbound on Long Point Road, and, at one point, he was about two car lengths behind the Nissan with his siren and lights activated. However, the driver of the Nissan did not pull over and stop for Alva. Rather, the driver of the Nissan "accelerated to a high rate of speed" and weaved

3

the Nissan in between and around other cars. The driver of the Nissan then made a left turn onto Antoine Drive and headed north in front of oncoming traffic, causing several cars to come "to a screeching halt," blocking Alva's path.

Officer Alva explained that the driver of the Nissan's drove in a "[v]ery erratic" manner, "at a high rate of speed," and he was "weaving in and out of traffic." Alva opined that the driver of the Nissan drove at approximately 60 miles per hour on Long Point Road and then accelerated to a minimum of 80 to 90 miles per hour. He noted that the posted speed limit on both Antoine Drive and Long Point Road were 35 miles per hour. Alva maneuvered his car around the stopped cars at the Antoine Drive intersection and continued his pursuit, following the Nissan northbound on Antoine Drive. At a point where there is a turn in the road, Alva lost sight of the Nissan, but he continued driving.

As Officer Alva continued in pursuit of the Nissan, he noticed people standing on the side of the street, waving at him, and pointing him to a house. When Alva slowed down and looked at the house, he realized that the Nissan was buried inside the house.

Officer Alva approached the Nissan, noted that it was still running, and saw appellant inside the Nissan. The "lady of the house" was screaming that her husband, the complainant, was trapped underneath the Nissan. Alva could not see the complainant, and he could not get to the front of the Nissan where the

4

complainant was trapped because the Nissan "was wedged inside of the house between the walls that had collapsed down on top of the [Nissan]." He did hear the moans of the complainant, who sounded like he was in pain.

Because of the manner in which the Nissan was wedged into the house, Officer Alva could not open its doors, and its windows were closed. After Alva and another officer broke one of the windows, Alva saw appellant upside-down in the passenger's floorboard. Alva told appellant to crawl towards him and the other officer, and once appellant was within his reach, Alva and the other officer helped him out of the car and arrested him. Alva did not see anyone other than appellant in the Nissan.

Officer Alva opined that the Nissan went off the road at a turn on Antoine Drive, struck a curb, and then went through a chain-link fence and into the house, where it knocked the complainant's daughter off of her bed and pinned the complainant, who had been lying in his bed, under it.

Appellant testified that on August 14, 2012, he met a friend "off of Long Point and the Antoine area at the Fallas Paredes" to shop. After leaving the store, appellant proceeded to walk to the car in which he had come to the store, a 2011 Nissan Altima, which was parked in front of the store. He got into the car and left the parking lot of the shopping center. Appellant then proceeded along Long Point Road, driving "the same speed limit that every other car was going."

5

Appellant explained that when he turned onto Antoine Drive from Long Point Road, he did not see a police car behind him, did not see any lights behind him, and did not hear any sirens. Appellant drove up Antoine Drive, and at the next intersection, he looked in his rearview mirror and saw an "HPD patrol car with its lights on run [a] red light and run into a civilian's car and hit a car." Appellant "kept proceeding to go because there [were] other vehicles behind [him]; . . . as [he] proceeded to go up Antoine, th[e] HPD officer . . . started coming in the direction that [appellant] was traveling in. [However, the officer] never got behind [appellant] exactly to the point where [the officer] was right behind [appellant]." Appellant "noticed there was an officer behind several other cars but not behind [him]."

At the next intersection, another car ran through a red light, or a stop sign, and hit the rear end of the passenger's side of the Nissan. This caused appellant to lose control of the Nissan, and he did not "know what happened after that because [he] was unconscious at the wheel." Appellant explained that he did not intentionally flee from the officer, but he admitted that he had driven the Nissan approximately 60 miles per hour while on Antoine Drive. He noted that he "kind of looked back to see if there was someone behind [him] that probably was an officer or something."

## Standard of Review

We review the legal sufficiency of the evidence by considering all of the evidence "in the light most favorable to the prosecution" to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S. W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.* We now review the factual sufficiency of the evidence under the same appellate standard of review as that for legal sufficiency. *Ervin v. State*, 331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

## Sufficiency of Evidence—Conviction

In his first issue, appellant argues that the evidence is factually insufficient to support his conviction because the State failed to prove beyond a reasonable

doubt that he intentionally fled from a police officer who was attempting to arrest or detain him.

A person commits the offense of evading arrest, or detention, and causing serious bodily injury "if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him" and "another suffers serious bodily injury as a direct result of an attempt by the officer," from whom the person is fleeing, to apprehend the person while he is in flight. TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(B) (Vernon Supp. 2013). "A person commits a crime under [s]ection 38.04 only if he knows a police officer is attempting to arrest [or detain] him but nevertheless refuses to yield to a police show of authority." *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see also Hobyl v. State*, 152 S.W.3d 624, 627 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd) ("[T]he accused must *know* that the person from whom he flees is a peace officer attempting to arrest or detain him.").

Appellant argues that he could not have intentionally fled from Officer Alva because "at no point was he aware that a police officer was attempting to detain him." Appellant asserts that when he entered the Nissan that he had parked in the parking lot of the shopping center and drove away, he did not see Alva or any other police officer in the parking lot. He noted that he "drove at the same speed limit as

8

the other cars, . . . did not see any HPD police car following him, did not see any lights from a police car, and did not hear any police sirens."

Intent may be determined from a defendant's words, acts, and conduct. *See Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998). When evaluating the sufficiency of the evidence to establish a defendant's intent for evading arrest, or detention, the speed, distance, and duration of a pursuit are factors to be considered. *See Godfrey v. State*, No. 14-13-00100-CR, 2014 WL 309381, at *2 (Tex. App.—Houston [14th Dist.] Jan. 28, 2014, no pet.) (mem. op., not designated for publication); *Griego v. State*, 345 S.W.3d 742, 751 (Tex. App.—Amarillo 2011, no pet.).

Here, although appellant testified otherwise, the record contains ample evidence demonstrating that he was aware that Officer Alva was attempting to detain him while he fled. Alva testified that when he arrived at the shopping center where the Nissan was located, he was wearing his police uniform and was in his patrol car, which had emergency overhead lights and was marked with police emblems. When Alva began making a u-turn to investigate the reported burglary being committed by appellant, appellant "screeched off through the parking lot" in the car. *See Schmitt v. State*, No. 13-13-00132-CR, 2013 WL 6924171, at *4–5 (Tex. App.—Corpus Christi Dec. 30, 2013, pet. ref'd) (mem. op., not designated for publication) (sudden departure upon presence of officer is circumstantial

9

evidence supporting conviction). Alva then activated his emergency equipment, which consisted of a siren and overhead flashing red, blue, and white lights. Appellant exited the parking lot, and Alva pursued him eastbound on Long Point Road. At one point during Alva's pursuit, he was only two car lengths behind appellant, with his siren and lights activated. *See Frederick v. State*, No. 14-13-00288-CR, 2014 WL 708547, at *4 (Tex. App.—Houston [14th Dist.] Feb. 20, 2014, no pet.) (mem. op., not designated for publication) (holding evidence sufficient to support conviction where officer, wearing police uniform, pursued defendant with his lights and siren activated); *Godfrey*, 2014 WL 309381, at *3 (holding evidence sufficient to support conviction where officer activated his patrol car's flashing lights and siren when he was within fifty feet of defendant's car); *Schmitt*, 2013 WL 6924171, at *3–5 (holding evidence sufficient where arresting officer pursued defendant with his police siren and lights activated); *Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.) (fact finder could have reasonably inferred defendant was aware officers were attempting to detain him, but defendant intended to flee, where pursuing officers had their lights and sirens activated while following defendant); *Hobyl*, 152 S.W.3d at 627 (holding evidence sufficient to support conviction where uniformed officer pursued defendant in marked patrol car with emergency lights and siren).

Appellant, however, did not pull over and stop for Officer Alva. Instead, appellant "accelerated to a high rate of speed" and "weav[ed] in and out of vehicles." *See Godfrey*, 2014 WL 309381, at *3 (holding evidence sufficient to support conviction where defendant sped away in response to officer's shows of authority); *Schmitt*, 2013 WL 6924171, at *4–5 (holding evidence sufficient where defendant "'took off at a high rate of speed'" after officer passed defendant in patrol car); *Hobyl*, 152 S.W.3d at 627 (holding evidence sufficient to support conviction where defendant increased speed at same time officer activated emergency lights and siren); *Rogers v. State*, 832 S.W.2d 442, 443–44 (Tex. App.—Austin 1992, no pet.) (holding evidence sufficient to support conviction where defendant sped up after seeing officer and officer pursued defendant with his overhead lights and siren activated).

When appellant made a left turn onto Antoine Drive in front of oncoming traffic, he caused several cars to come to "a screeching halt." Officer Alva described appellant's driving as "[v]ery erratic," "at a high rate of speed," and as "weaving in and out of traffic." Alva opined that appellant was driving approximately 60 miles per hour on Long Point Road and he accelerated to a minimum of 80 to 90 miles per hour. The posted speed limit was 35 miles per hour on both Long Point Road and Antoine Drive. Eventually, appellant lost control of the Nissan, went off the road through a chain-link fence and into the

11

complainant's house. *See Miller v. State*, No. 05-03-00488-CR, 2004 WL 1434549, at *1–2 (Tex. App.—Dallas June 28, 2004, no pet.) (mem. op., not designated for publication) (holding evidence sufficient to support conviction where officer chased defendant with police lights and siren activated, defendant accelerated to up to 80 miles per hour, and nearly collided with passing cars); *Kimbrough v. State*, No. 04-01-00273-CR, 2002 WL 112547, at *2–4 (Tex. App.—San Antonio Jan. 30, 2002, no pet.) (not designated for publication) (holding evidence sufficient where officer, with activated emergency lights, pursued defendant while defendant drove recklessly, swerved between lanes on road, and lost control of car, driving it into curb); *Rogers*, 832 S.W.2d at 443–44 (holding evidence sufficient to support conviction where defendant sped up, was traveling at approximately 95 miles per hour, and passed cars in no passing zones).

The trial court, acting as the fact finder, was the sole judge of the witnesses' credibility, and it could have disbelieved appellant's testimony that he was unaware of Officer Alva's attempt to detain him. *See Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier-of-fact could have found beyond a reasonable doubt that appellant intentionally fled from a police officer who was attempting to arrest or detain him. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Accordingly, we hold that the evidence is sufficient to support

12

appellant's conviction for evading arrest, or detention, and causing serious bodily injury.

We overrule appellant's first issue.

### Sufficiency of Evidence—Habitual Offender

In his second issue, appellant argues that the evidence is legally and factually insufficient to establish that he was a habitual offender because (1) the State failed to prove so beyond a reasonable doubt and (2) the trial court failed "to make any findings at all that the two sequential habitual enhancement paragraphs were both true."

The trial court found appellant guilty of the third-degree felony offense of evading arrest, or detention, and causing serious bodily injury. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(B). A third-degree felony offense carries a punishment range of imprisonment for not less than 2 years and not more than 10 years and a fine not to exceed $10,000. *See* TEX. PENAL CODE ANN. § 12.34 (Vernon 2011). However, the range of punishment may be enhanced to a term of imprisonment for life, or for any term not more than 99 years or less than 25 years, if it is shown that a defendant has previously been convicted of two felony offenses, and the second previous felony conviction was for an offense that occurred subsequent to the first previous conviction becoming final. *See* TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2013).

13

Here, the indictment included two enhancement paragraphs alleging that appellant had previously been convicted of the felony offense of theft on April 30, 1991, and was subsequently convicted of the felony offense of aggravated robbery on December 2, 1992, which was committed after appellant's conviction for theft became final. Appellant pleaded true to the allegations in both enhancement paragraphs during the punishment phase of the trial. Appellant also entered into a stipulation of evidence regarding his prior felony convictions. The trial court sentenced appellant to confinement for 35 years, indicating that it punished appellant as a habitual offender. *See id.*

In regard to appellant's assertion that the State failed to prove beyond a reasonable doubt that he was a habitual offender, we note that the State must indeed prove enhancement allegations true beyond a reasonable doubt. *Magic v. State*, 217 S.W.3d 66, 70 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Further, "[w]hen the State seeks to punish a defendant as an habitual offender, and thus includes two felony enhancement paragraphs in the indictment, the State must show that the defendant committed each successive felony after the prior conviction was final." *Id.* However, if a defendant pleads true to the enhancement allegations, the State's burden is satisfied and the defendant cannot complain on appeal that the evidence is insufficient to support the allegations. *See Harvey v. State*, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981); *Magic*, 217 S.W.3d at 70–71.

14

Here, appellant pleaded true to the allegations in both enhancement paragraphs contained in the indictment. By virtue of his pleas, the evidence is sufficient to find the enhancement allegations true beyond a reasonable doubt.

In regard to appellant's assertion that the trial court failed to make findings as to the truth of the enhancement allegations during the punishment phase of trial and enter the findings in its written judgment, we note that a trial court is not required to make specific findings regarding punishment enhancement allegations. *See* TEX. CODE CRIM. PROC. ANN. art 42.01 (Vernon Supp. 2013) (listing items judgment should reflect); *see also Pelache v. State*, No. 13-08-00463-CR, 2011 WL 743230, at *8 (Tex. App.—Corpus Christi Mar. 3, 2011, no pet.) (mem. op., not designated for publication) (noting that judgment not required to reflect specific findings regarding enhancement allegations); *Walls v. State*, No. 06-04-00009-CR, 2004 WL 1440619, at *4 (Tex. App.—Texarkana June 29, 2004, no pet.) (mem. op., not designated for publication) ("Article 42.01 does not require that the judgment include specific findings regarding the punishment enhancement allegations in the indictment.").

Further, the trial court impliedly found true the allegations in both enhancement paragraphs of the indictment. "A trial court makes an implied finding of true to an enhancement allegation when the record establishes the truth of that allegation." *Torres v. State*, 391 S.W.3d 179, 183–84 (Tex. App.—Houston

15

[1st Dist.] 2012, pet. ref'd). Additionally, appellate courts have held that a trial court makes an implied finding of true to an enhancement allegation if the sentence imposed by the trial court is outside of the punishment range for the underlying offense, but is within the punishment range for the offense as enhanced by a prior conviction to which the defendant has confessed. *See id.*

Here, appellant pleaded true to the enhancement allegations during the punishment phase of trial, and he entered into a stipulation of evidence regarding his prior felony convictions. The trial court sentenced appellant within the range of punishment for the offense as enhanced by appellant's prior convictions. Because the record establishes the truth of the enhancement allegations and the trial court made implied findings of true to the allegations in both enhancement paragraphs, we hold that the trial court did not err in sentencing appellant as a habitual offender. *See Torres*, 391 S.W.3d at 183–85 (holding sentence imposed by trial court proper where defendant pleaded true to both enhancement allegations and trial court impliedly found allegations in enhancement paragraphs true); *Harris v. State*, No. 05-02-01728-CR, 2005 WL 639388, at *1–2 (Tex. App.—Dallas Mar. 21, 2005, pet. ref'd) (not designated for publication) (holding that, even though trial court made no oral or written findings on two enhancement allegations, punishment imposed by trial court fell within enhanced range and trial court had impliedly found enhancement allegations to be true).

16

We overrule appellant's second issue.

**Modification of Judgment**

Although appellant pleaded true to the allegations in the enhancement paragraphs, the trial court, on its written judgment, entered "N/A" where it should have noted appellant's pleas of "true." It also entered "N/A" in lieu of its findings of "true" with respect to each enhancement allegation. *See Torres*, 391 S.W.3d at 185. Further, the trial court mistakenly noted "guilty" for appellant's plea to the offense where it should have written "not guilty." And the pre-printed judgment form erroneously contains the following boilerplate language on page 2: "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED."[2] *See Denson v. State*, Nos. 01-10-00276-CR, 01-10-00277-CR, 2011 WL 5617871, at *2 (Tex. App.—Houston [1st Dist.] Nov. 17, 2011, no pet.) (mem. op., not designated for publication).

"[A]ppellate court[s] ha[ve] the power to correct and reform a trial court judgment 'to make the record speak the truth when it has the necessary data and information to do so, or make any appropriate order as the law and nature of the

---

[2] Neither party has raised the issue of the trial court's judgment incorrectly stating that appellant entered a plea of "guilty" to the offense of evading arrest, or detention, and causing serious bodily injury nor the issue that the trial court's judgment mistakenly states: "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED." However, our authority to correct an incorrect judgment is not dependent upon a request of any party and the Court may do so sua sponte. *See Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd).

17

case may require.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet ref'd)).  In this case, the record reflects that appellant pleaded "not guilty" to the offense of evading arrest, or detention, and causing serious bodily injury, but pleaded "true" to the allegations in both enhancement paragraphs.  Further, the trial court impliedly found the allegations in the enhancement paragraphs "true."  Finally, the record reflects that appellant has a right to appeal and the trial court has since signed a certification of appellant's right to appeal, certifying that this is not a plea-bargain case and appellant has a right to appeal.  Therefore, we have the necessary evidence to correct the judgment.

Accordingly, we modify the judgment to reflect that appellant pleaded "not guilty" to the offense of evading arrest, or detention, and causing serious bodily injury; appellant pleaded "true" to both enhancement paragraphs; and the trial court found both enhancement allegations "true."  We further modify the judgment to delete the following language on page 2:  "APPEAL WAIVED.  NO PERMISSION TO APPEAL GRANTED."  *See id.*; *Denson*, 2011 WL 5617871, at *2; *see also* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).

## Conclusion

We affirm the judgment as modified.

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).

19