**Peter Paul HOBYL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–03–01160–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 4, 2004.

James F. Keegan, Houston, TX, for Appellant.

Michael R. Little, District Attorney, Dan P. Bradley, First Assistant District Attorney, Chambers County, Texas, Anahuac, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and BLAND.

**OPINION**

TERRY JENNINGS, Justice.

A jury found appellant, Peter Paul Hobyl, guilty of the offense of evading arrest and detention while using a vehicle,[1] which is a state jail felony,[2] and assessed his punishment at confinement for 270 days and a fine of $2,000. In four issues, appellant contends that the trial court erred in denying appellant's motion for a directed verdict, that the evidence was legally and factually insufficient to support his conviction, and that the trial court erred in instructing the jury in the punishment charge that the trial court "could suspend the imposition of the sentence assessed by the jury and place appellant on community supervision." We affirm.

**Facts**

Chambers County Sheriff's Deputy K. Garcia testified that, on March 4, 2003, around 2:30 p.m., he was patrolling Interstate 10 in the area of the Highway 61 overpass in Chambers County. Garcia was wearing his uniform and was driving a marked Chambers County patrol car, equipped with fully-operational overhead lights and siren. Upon entering the interstate in the right-hand lane, Garcia observed appellant's yellow motorcycle drive past him in the left-hand lane. Garcia moved to the left-hand lane, activated his patrol car's emergency lights and siren, and paced appellant, who was traveling at a speed of 75 miles per hour (mph), for approximately one mile. Garcia testified that appellant then accelerated to a speed of 110 mph, and Garcia pursued him for approximately three miles. While Garcia pursued appellant, appellant looked from side to side in the side-mounted mirrors on the motorcycle. Where the interstate ex-

---

1. Tex. Pen.Code Ann. § 38.04 (Vernon 2003).

2. *Id.* § 12.35(a) (Vernon 2003).

panded into three lanes, Garcia pulled into the middle lane beside appellant, who was now in the far left-hand lane, and Garcia motioned for appellant to stop. Appellant, traveling at a speed of 90 mph, continued to look in Garcia's direction in the motorcycle's rearview mirrors. Appellant then drove around the patrol cars of Garcia and Chambers County Sheriff's Deputy J. Mitcham, who had entered the interstate at about the 817 mile marker. Soon thereafter, appellant stopped on the right-hand shoulder. Garcia arrested appellant, searched him, and found marihuana in his right front pocket. On cross-examination, Garcia testified that appellant accelerated to 110 mph *before* Garcia activated the emergency lights and siren, but then said that it "was actually at the same time." Garcia also testified that it was a dry, clear day.

Deputy Mitcham testified that, while patrolling the Anahuac area in a marked patrol car, he had heard Deputy Garcia "initiate pursuit." In response, Mitcham drove toward Interstate 10 and saw appellant on a yellow motorcycle. Mitcham activated his patrol car's emergency lights and siren, entered the interstate near the 817 mile marker, and pulled in front of appellant. Appellant changed lanes, drove around Mitcham's and Garcia's patrol cars, and then stopped on the right-hand shoulder. Mitcham then parked his patrol car behind appellant. Mitcham further testified that appellant's motorcycle did not sound like a Harley Davidson, but "sounded more like a Weed–Eater with a muffler on it," and also sounded similar to "high-pitched humming with a little pop to it."

Appellant testified that, on March 4, 2003, he was driving his motorcycle through Chambers County on Interstate 10 to Florida. At about 2:30 p.m. or 3:00 p.m., appellant had been traveling at a speed over 100 mph "for a minute" when he noticed Deputy Mitcham's patrol car, with its emergency lights activated, entering the interstate from a feeder road. This was the first time appellant became aware that any law enforcement officer was attempting to stop him. In response, appellant decreased his speed because he thought that he was going to be stopped for speeding. Mitcham, not Deputy Garcia, pulled alongside appellant and motioned for him to stop. Appellant then looked over his shoulder to check for traffic, and, for the first time, noticed Garcia's patrol car behind him. Appellant stopped on the right-hand shoulder. The deputies placed appellant under arrest, searched him, and found the marihuana after appellant told them that he had a small amount in his top left shirt pocket.

Appellant further testified that he had not been attempting to evade arrest or detention by Garcia. Because it was cold and raining, he was wearing a motorcycle helmet, a rain jacket and pants, and a hood underneath his helmet. Appellant was also driving his motorcycle in a crouched-down position, with his chest on top of the gas tank and his head behind the wind screen to protect himself from the elements. Furthermore, although his motorcycle had two rearview mirrors, appellant could see only the sky in the mirrors while he was in a crouched-down position. Additionally, appellant's motorcycle produced a sound louder than a Harley–Davidson, and the noise became louder with speed. The wind speed also made an extremely loud noise, as did his flapping rain suit. Appellant concluded that Deputies Garcia and Mitcham were "[c]ompletely lying" about the entire incident, except for the facts that appellant was speeding and that "Officer Mitcham did pull onto the highway from the feeder in front of [him] and [appellant] stopped."

## Legal Sufficiency of the Evidence

■ In his first issue, appellant contends that the trial court erred in denying his motion for a directed verdict. In his second issue, appellant argues that the evidence was legally insufficient to support his conviction because the State failed to prove beyond a reasonable doubt that appellant intentionally fled from a person whom he knew to be a peace officer attempting lawfully to arrest or detain him.

A challenge on appeal to the denial of a motion for directed verdict is a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex.Crim.App.1996). We review the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict to determine if any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). Although our analysis considers all evidence presented at trial, we may not reweigh the evidence and substitute our judgment for that of the fact finder. *Id.*

■ A person commits the offense of evading arrest or detention if he intentionally flees from a person whom he knows is a peace officer attempting lawfully to arrest or detain him. TEX. PEN.CODE ANN. § 38.04(a) (Vernon 2003); *Hazkell v. State*, 616 S.W.2d 204, 205 (Tex.Crim.App.1981). An element of the offense of evading arrest or detention is that the accused must *know* that the person from whom he flees is a peace officer attempting to arrest or detain him. *See Jackson v. State*, 718 S.W.2d 724, 726 (Tex.Crim.App.1986).

Appellant asserts that he "can not have intentionally fled [D]eputy Garcia if he did not know Garcia was chasing him." Appellant argues that, because he was traveling at such a high rate of speed, his motorcycle engine, the wind, and his flapping rain suit reduced his ability to hear, as did his motorcycle helmet and the hood appellant was wearing. Appellant further asserts that his rearview vision was impaired because he was wearing a full face helmet and was riding his motorcycle in a crouched-down position.

Here, however, ample evidence exists to demonstrate that appellant knew that the deputies were attempting to arrest or detain him. Deputy Garcia, a uniformed officer in a marked patrol car, testified that appellant increased his speed to 110 mph at about the same time that Garcia activated his patrol car's emergency lights and siren. Garcia also testified that he pursued appellant for three miles at a speed of 110 mph. Moreover, Garcia testified that he observed appellant looking from side to side in the motorcycle rearview mirrors when Garcia was behind him. Finally, appellant admitted that he was traveling at a speed over 100 mph, knowingly committing a traffic offense, when he first noticed a patrol car pursuing him. Considering this evidence, a rational fact finder could have found, beyond a reasonable doubt, that appellant knew that Garcia was attempting lawfully to arrest or detain him.

Accordingly, we hold that the evidence was legally sufficient to support appellant's conviction.

We overrule appellant's first and second issues.

## Factual Sufficiency of the Evidence

■ In his third issue, appellant argues that the evidence was factually insufficient to support his conviction because the State failed to prove, beyond a reasonable doubt, that appellant intentionally fled from a person whom he knew was a peace officer attempting to arrest or detain him.

In our review of the factual sufficiency of the evidence, we view all of the evidence neutrally, and ask whether the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or whether the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Zuniga v. State,* 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004). In a factual sufficiency review, we may not substitute our own judgment for that of the fact finder. *Jones v. State,* 944 S.W.2d 642, 648 (Tex.Crim.App.1996).

In support of his contention that the evidence was factually insufficient to support his conviction, appellant relies on his own testimony. Appellant testified that he had been "speeding for a minute" at over 100 mph when he noticed Deputy Mitcham enter the interstate from a feeder road. Appellant testified that, when Mitcham pulled alongside appellant and motioned for him to stop, appellant "figured [he] was getting pulled over," and, when he looked over his shoulder to check for traffic, he noticed, for the first time, that Deputy Garcia's patrol car was behind him. Furthermore, appellant testified that he was not aware that Garcia was following him because the noise produced from appellant's motorcycle, the wind, his flapping rain suit, helmet, and hood impaired his hearing. Finally, appellant testified that his vision was impaired because he was wearing a full face helmet and hood and was in a crouched-down position on his motorcycle, which allowed him to see only the sky in his motorcycle's rearview mirrors.

However, as noted above, Deputy Garcia testified that appellant increased his speed to 110 mph at about the same time that Garcia activated his patrol car's emergency lights and siren and that he pursued appellant for three miles at a speed of 110 mph in a marked patrol car. Garcia also testified that he, not Mitcham, pulled alongside appellant and motioned for him to stop. Moreover, Garcia testified that he observed appellant looking from side to side in the motorcycle rearview mirrors when Garcia was behind appellant.

The jury was free to believe or to disbelieve all or any part of Deputy Garcia's and appellant's testimony. *McKinny v. State,* 76 S.W.3d 463, 468–69 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Viewing all of this evidence neutrally, we conclude that the evidence was not so obviously weak as to undermine confidence in the jury's determination and was not so greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred. Accordingly, we hold that the evidence was factually sufficient to support appellant's conviction.

We overrule appellant's third issue.

## Instructions in the Punishment Charge

In his fourth issue, appellant contends that the trial court erred in instructing the jury in the punishment charge that the trial court could suspend the imposition of the sentence assessed by the jury and place appellant on community supervision. Appellant complains of the following instructions:

> Our law further provides that after punishment is assessed by the jury, the Court may suspend imposition of the sentence or may order the sentence served immediately. The Court may also suspend all or part of any fine imposed.

> If the Court suspends service of the sentence, the Court may impose any reasonable conditions of supervision designed to protect or restore the community, protect or restore the victim, or

punish, rehabilitate or reform the defendant.

In addition, the Court may impose as a condition of community supervision that the defendant submit at the beginning of the supervision period to a term of confinement in the state jail of not more than 180 days or less than 90 days.

If during the term of community supervision, the defendant violates a condition imposed by the Court, community supervision can be revoked and the defendant ordered to serve the term of confinement assessed by the jury.

Appellant does not assert that the trial court misstated the law in these four paragraphs. Rather, appellant argues that it was error for the trial court to include in its punishment charge that it had the authority to suspend any jail sentence imposed by the jury because (1) the instructions were "completely unnecessary" and "prejudicial to appellant"; (2) "[t]he jury, having been instructed as it was, [could] only have taken the possibility of a suspended sentence into consideration, and might reasonably have responded with a more severe sentence than it would have assessed had it not been so instructed"; and (3) the instructions "comported with neither due process[3] nor due course of law."[4]

A trial court's charge to a jury must distinctly set forth "the law applicable to the case." TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2004–2005). Here, the record indicates that, before trial, appellant elected to have the jury assess his punishment, and appellant correctly notes that jury-recommended community supervision is not available to a defendant convicted of a state jail felony. *See id.* art. 42.12 § 4(d)(2) (Vernon Supp.2004–2005).

However, on conviction of a state jail felony punished under section 12.35(a) of the Penal Code, "the judge may suspend the imposition of the sentence and place the defendant on community supervision or may order the sentence to be executed." *Id.* art. 42.12 § 15(a)(2) (Vernon Supp. 2004–2005).

We conclude that the complained-of instructions were neither "unnecessary" nor "prejudicial" to appellant. The instructions contained a proper articulation of the law and informed the jury, in neutral language, of the judge's option to suspend imposition of the sentence and place appellant on community supervision or order that the sentence be executed. The instructions also explained that the judge could impose reasonable conditions of community supervision and the consequences of a violation of one of those conditions. The instructions informed the jury that if the judge suspended imposition of the sentence, placed appellant on community supervision, and subsequently revoked community supervision, the judge could then order appellant "to serve the term of confinement assessed by the jury."

Although the jury may have imposed "a more severe sentence than it would have assessed had it not been so instructed," the jury was entitled to make an informed decision as to appellant's punishment, taking into account the judge's option to suspend imposition of the sentence and place appellant on community supervision or to order that the sentence be executed immediately. Without appropriate instruction, a jury could be misled into believing that a defendant would be ordered automatically to serve the term of confinement assessed by the jury. This is not the law, and such a misconception could further mislead a jury into assessing a shorter term of con-

---

3.  U.S. CONST. amends. V, XIV.

4.  TEX. CONST. art. I, § 19.

finement than it might otherwise assess. Moreover, a jury is entitled to know that if a judge does actually suspend a defendant's sentence, place him on community supervision, and subsequently revoke community supervision, that the judge could, in fact, order the defendant to serve the term of confinement *assessed by the jury.* *See id.* art. 42.12 § 23(a) (Vernon Supp. 2004–2005).

We hold that the complained-of instructions distinctly, neutrally, and correctly set forth the law applicable to the case and did not violate appellant's constitutional rights to due process and due course of law under the United States and Texas constitutions. Accordingly, we further hold that the trial court did not err in including the complained-of instructions in the punishment charge.

We overrule appellant's fourth issue.

### Conclusion

We affirm the judgment of the trial court.