Appellant=s Motion for Rehearing Overruled; Affirmed, Memorandum Opinion
of January 20, 2009, Withdrawn, and Substitute Memorandum Opinion on Rehearing
filed April 2, 2009








 

Appellant=s Motion for Rehearing Overruled; Affirmed, Memorandum
Opinion of January 20, 2009, Withdrawn, and Substitute Memorandum Opinion on
Rehearing filed April 2, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00664-CR

____________

 

ANTHONY PAUL BLOZINSKI, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 122nd
District Court

Galveston County, Texas

Trial Court Cause No. 05CR0658

 



 

M E M O R A N D U M   O P I N I O N   ON   R E H E A R I
N G

We overrule appellant=s motion for
rehearing, withdraw our opinion of January 20, 2009, and issue this substitute
memorandum opinion on rehearing.  Appellant, Anthony Paul Blozinski, appeals
his conviction for felony evading arrest or detention.  After a jury found
appellant guilty, the trial court sentenced him to six months= incarceration,
which was probated for nine months.  In a single issue, appellant challenges
the legal and factual sufficiency of the evidence to support the conviction. 
We affirm.








Background

Police Officer Sean Arena testified that on January 31,
2005, he was working for the Galveston Police Department.  Around 7 p.m., he
was driving in a marked patrol car, heading eastbound on Stewart Road in
Galveston.  At that time, he observed a vehicle, which he later identified as
being driven by appellant, traveling westbound in the eastbound lane.  Arena
slowed and activated his overhead emergency lights.  Appellant continued
directly toward Arena, causing Arena to come to a complete stop.  At the last moment,
appellant veered into the correct lane.  After passing Arena=s vehicle,
appellant accelerated.  Arena then made a u-turn and activated his siren
momentarily to indicate that he was pursuing appellant=s vehicle.  As he
did so, appellant continued to accelerate and then turned south onto Princeton
Drive.

Once on Princeton, which is a dead end street, appellant
began to alternately brake and accelerate erratically, Alike he didn=t know what to do.@  Appellant then
drove off the roadway into a wet grassy area, and his tires began to spin. 
Arena pulled behind appellant, leaving a safe distance between the vehicles. 
Assuming appellant was going to get stuck, Arena put his car in park and began
to get out.  When the reverse lights on appellant=s vehicle came on,
Arena sat back down and shifted into neutral.  Appellant=s tires began to
spin in reverse, and his car headed backwards towards Arena=s vehicle, causing
Arena to back away to avoid a collision.  After appellant pulled into the
roadway, his car then accelerated forward, toward the end of Princeton Drive,
where appellant stopped with his vehicle half on gravel and half on grass.  He
then again placed the vehicle in reverse and backed up a few feet before
stopping and apparently placing his vehicle in park.








Arena exited his patrol car and ordered appellant to exit
his own vehicle.  After a few seconds, appellant complied.  Arena then ordered
appellant to go to the rear of appellant=s vehicle. 
Appellant stated AI didn=t do anything
wrong.  I just want to go home.@  He then turned and walked back towards
the driver=s side of the vehicle.  Arena shouted more commands,
and appellant finally moved to where he had been ordered to move; at which
point, Arena Atook him into custody.@  As Arena was
placing handcuffs on appellant, appellant stated:  AI=m sorry.  I=m sorry.  The
police make me nervous.  I just wanted to get away from you.  I wasn=t trying to hit
you.  I just wanted you to get out of my way.@

Arena testified that he had no doubt that appellant was
trying to flee from him from the beginning of the encounter and particularly
when appellant almost backed into Arena=s vehicle and then
tried to drive off again.  Arena believed that appellant was intentionally
attempting to flee to avoid lawful arrest.

Appellant testified that A[t]echnically, no
. . . I was not trying to evade arrest.@  He said that the
week before the incident, his wife told him that she had cancer.[1] 
On the day in question, he had gone to see a psychiatrist to help him cope with
his wife=s illness. 
Afterwards, he went to a bar for awhile.  Later, he was driving down Stewart
Road when he drifted over the yellow line.  He saw a police officer driving the
opposite direction, and when the officer passed appellant, the officer Aturned his lights
on.@  Appellant said
that he told himself Awell, he=s not stopping
me.  He=s probably after
somebody else but I don=t want to be here anyway.@  Appellant then Atook off.@  He turned onto
Princeton Drive and when he got to the end, his car went onto the grass.  He
could see the officer in his rearview mirror.  Appellant backed his car up to
get it back onto the road and then exited the vehicle.  Appellant said that he
may have told the officer that he just wanted to go home but said no more than
that.








Appellant further explained that his intention in turning
onto Princeton was to pull over, calm down, and Await until it=s all over.@  He denied
attempting to speed away from the officer or attempting to ram the officer=s vehicle. 
Appellant said that his thinking Awas not 100
percent@ and that he may
have engaged in some self-deception in concluding the officer was not after
him.  He said that when the officer first activated his lights, he (appellant)
may have been in denial about the situation, but once on Princeton, he Acame to [his]
senses.@  He said that
when he turned onto Princeton and saw the officer=s lights behind
him, he figured he=d drive to the end of the street but then
got Aa little excited
and . . . wound up in the grass.@  He then backed
into the roadway but denied that his wheels spun at any point.  He said that he
did not realize Officer Arena was behind him when he was backing up.  As
stated, a jury found appellant guilty, and the trial court sentenced him to six
months incarceration, probated for nine months.

Discussion

In his sole issue, appellant contends that the evidence is legally and factually insufficient
to uphold his conviction for felony evading arrest or detention.  Because appellant does not
differentiate in his arguments between the differing standards for legal and
factual sufficiency analysis, we will address the arguments altogether while
keeping in mind the distinct standards of review.  Among other possibilities, a
person commits the offense of felony evading arrest or detention if he Auses a vehicle@ while Aintentionally [fleeing] from a person
he knows is a peace officer attempting lawfully to arrest or detain him.@  Tex. Penal Code Ann. ' 38.04.  This is the form of felony
evading arrest or detention for which appellant was convicted.








In a
legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and determine whether a trier of fact could have found
each element of the offense beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Young v. State, 14 S.W.3d 748, 753 (Tex. Crim.
App. 2000).  The jury is the exclusive judge of the credibility of witnesses
and of the weight to be given to their testimony; it is within the exclusive
province of the jury to reconcile conflicts in the evidence.  Wesbrook v.
State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  Thus, when performing a
legal sufficiency review, we may not reevaluate the weight and credibility of
the evidence and substitute our judgment for that of the fact-finder.  Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  We must resolve any
inconsistencies in the testimony in favor of the verdict.  Curry v. State,
30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In a
factual sufficiency review, we consider all of the evidence in a neutral light,
favoring neither party.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex.
Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App.
2005).  We then ask whether (1) the evidence supporting the conviction,
although legally sufficient, is nevertheless so weak that the jury=s verdict seems clearly wrong and
manifestly unjust, or (2) considering conflicting evidence, the jury=s verdict is against the great weight
and preponderance of the evidence.  Watson, 204 S.W.3d at 414-15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  Additionally, we must
give due deference to the jury=s determinations, particularly those concerning the weight of
the evidence and the credibility of witness testimony.  See Johnson, 23
S.W.3d at 8-9.

Appellant specifically contends that the evidence is
insufficient to establish that he intended to flee from Officer Arena.  As
appellant recognizes, a person=s intent can be inferred from his or her
conduct.  See, e.g., Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim.
App. 2004).  Appellant insists, however, that his conduct during the incident
in question occurred at too slow of a speed and over too short a distance and
too short a period of time to support an inference that he intended to flee
from Officer Arena.  We disagree.








In support of his arguments, appellant cites cases wherein
the evidence supported an inference that a particular defendant was aware of an
officer=s desire for the
defendant to stop because the officer had followed the defendant=s vehicle for a
period of time or the defendant increased his speed when the officer activated
his lights or siren.  See, e.g., Hobyl v. State, 152 S.W.3d 624, 628
(Tex. App.CHouston [1st Dist.] 2004) (holding evidence was
sufficient to sustain conviction where deputy testified defendant had increased
speed and was followed for three miles at 110 miles per hour), pet. dism=d, 193 S.W.3d 903
(Tex. Crim. App. 2006); Britt v. State, No. 14-06-00141-CR, 2007 WL
1215490, at *3 (Tex. App.CHouston [14th Dist.] April 26, 2007, pet.
ref=d) (not designated
for publication) (holding evidence was sufficient where testimony showed
defendant Adrove his vehicle a significant distance@ with a patrol car
in pursuit); Luna v. State, No. 04-05-00518-CR, 2006 WL 1814308, at *2
(Tex. App.CSan Antonio July 5, 2006, no pet.) (not designated for
publication) (holding evidence was sufficient where officer pursued defendant
for four miles).  None of the cited cases, however, stands for the proposition
that in order to prove intent to flee, the State must show that the defendant
was pursued over a certain distance, at a particular speed, or for a particular
length of time.  Indeed, while speed, distance, and time of pursuit may be
factors in considering whether a defendant intentionally fled, no particular
speed, distance, or time is required to show the requisite intent if other
evidence establishes such intent.  Cf. Horne v. State, 228 S.W.3d 442,
445-46 (Tex. App.CTexarkana 2007, no pet.) (holding slow
driving over a short period of time could constitute evading detention or
arrest under the right circumstances).

Here, Officer Arena testified that after he turned on his
overhead lights, made a u-turn to follow appellant, and activated his siren
momentarily to indicate that he was pursuing appellant, appellant continued to
accelerate away and then turned onto Princeton Drive.  On Princeton, appellant
began to alternately brake and accelerate erratically, Alike he didn=t know what to do,@ ultimately driving
off the end of the road into a wet grassy area and spinning his tires.  When
Arena pulled behind appellant, appellant reversed towards Arena=s vehicle, causing
Arena to back away to avoid a collision.  Appellant then accelerated forward
again toward the end of the road, running partially off the road before finally
stopping halfway on gravel and halfway on grass.








Additionally, appellant himself testified that he saw
Officer Arena=s lights come on before he ever turned onto
Princeton.  Appellant said that when he saw the officer=s lights come on,
he (appellant) Atook off@ and turned onto
Princeton.  Appellant admitted that once he turned, he could see Officer Arena=s vehicle and
overhead lights in his rearview mirror.  Thus, by appellant=s own admission,
he knew at this point that Arena wanted him to stop.  Appellant further
testified that he just wanted to pull over, calm down, and Await until it=s all over,@ and that he did
not attempt to evade detention or arrest.  However, as sole judge of the weight
and credibility to be assigned the testimony, the jury was free to believe
Arena=s version of
events on Princeton rather than appellant=s version.  See
Lancon v. State, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).  As discussed,
Arena detailed what reasonably could be interpreted as attempts by appellant to
evade arrest or detention by driving away from Arena after appellant
acknowledged that he had seen Arena follow him with overhead lights activated. 
Contrary to appellant=s suggestion in his brief, the fact that
Princeton is a dead end road does not somehow convert his actions to
necessarily innocent ones.  The jury reasonably could have interpreted
appellant=s actions on Princeton Drive as intentional fleeing,
regardless of the lack of speed or ultimate ineffectiveness of the actions. 
See Mayfield v. State, 219 S.W.3d 538, 540-41 (Tex. App.CTexarkana 2007, no
pet.) (holding that an offense under section 38.04 does not require proof of
high-speed or effectual fleeing, just intentional fleeing).

Lastly, Arena=s testimony that
after appellant exited his vehicle, appellant stated AI=m sorry.  I=m sorry. . . .  I
just wanted to get away from you. . . .  I just wanted you to get out of my
way,@ further supports
the conclusion that appellant had been intentionally fleeing from the officer. 
See, e.g., Alexander v. State, 229 S.W.3d 731, 740 (Tex. App.CSan Antonio 2007,
pet. ref=d) (holding intent
may be inferred from statements made during and after the incident in
question).

The evidence is legally and factually sufficient to sustain
the verdict.  Accordingly, we overrule appellant=s sole issue.

We affirm the trial court=s judgment.

 

/s/      Adele Hedges

Chief Justice

Panel consists of Chief Justice Hedges and Justices Guzman
and Brown.

Do Not Publish C Tex. R. App. P.
47.2(b).

 









[1]  At one point during his testimony, appellant
referred to his Aformer wife.@ 
It is unclear from the record whether appellant was referring to a divorce
prior to the day on which he was arrested or to the fact that she was deceased
by the time of trial.