**Opinion issued April 21, 2015**



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-14-00434-CR

————————————

**ALEX GONZALEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1368857**

---

**MEMORANDUM OPINION**

A jury convicted appellant, Alex Gonzalez, of the third-degree felony offense of evading arrest.[1]  After appellant pleaded true to the allegations in two

---

[1]    *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A) (Vernon Supp. 2014).

enhancement paragraphs, the trial court assessed punishment at twenty-five years' confinement. In his sole issue, appellant contends that the State failed to present sufficient evidence that he intentionally fled from a peace officer.

We affirm.

## Background

On November 23, 2012, Harris County Sheriff's Department Deputy J. Laird received a dispatch reporting an assault and requesting that he meet with the complainant at the Christus St. Catherine Hospital in Katy. After Deputy Laird spoke with the complainant, appellant became a suspect in the assault. Deputy Laird informed two other deputies working in the area that appellant would be returning to the hospital, and he gave the deputies a description of appellant and his vehicle.

Appellant returned to the hospital and began driving around the parking lot. Deputy Laird testified that he stood by the entrance to the emergency room and saw two other deputies in separate cars pull behind appellant in the parking lot. Laird saw emergency lights flashing on both patrol cars. Appellant drove by where Deputy Laird was standing; and Laird, who was in full uniform, drew his firearm, in case appellant became violent, and shouted at appellant to stop. Appellant then "accelerated and took off through the parking lot." Deputy Laird testified that the hospital's parking lot was not busy at the time and that "[t]here

were plenty of places to stop." After a brief chase lasting "less than five minutes," appellant eventually stopped in the parking lot, and the deputies arrested him.

Deputy B. Luce, one of the deputies involved in the chase, testified that Deputy Laird gave him a description of appellant and appellant's vehicle. Deputy Luce stated that his patrol car contains a video recorder that begins recording when he activates his car's emergency lights. The trial court admitted a DVD recording of Deputy Luce's encounter with appellant. Deputy Luce activated his flashing lights in an attempt to have appellant pull over so the officers could investigate the assault allegations against him. Deputy Luce did not immediately activate his siren because he wanted "to give [appellant] the benefit of the doubt," but he eventually did so when appellant failed to stop. Throughout the chase, which Deputy Luce testified lasted a little over two minutes, appellant drove through "a few stop signs and then the red light at the intersection." Deputy Luce opined that appellant's failure to stop immediately was not an accident because he "had plenty of places to stop" in the parking lot. Deputy Luce testified that appellant accelerated when Deputy Laird drew his weapon and shouted at him to stop. Appellant finally stopped his car when one of the three patrol units blocked the exit to the parking lot and there was nowhere else for appellant to go.

On the DVD recording of the chase, the flashing lights from Deputy Luce's patrol car are visibly reflected on appellant's rear license plate throughout the

incident. Deputy Luce turns on his siren approximately one minute into the chase, which then lasts for approximately one more minute. The DVD recording shows that appellant drove past Deputy Laird, who was in uniform and who had his weapon drawn and was shouting at appellant to stop, drove over speed bumps and through several stop signs within the parking lot, ran a red light to make a U-turn back into the parking lot, and finally stopped his car when one of the deputies blocked the exit to the parking lot. The recording corroborates Deputy Laird's and Deputy Luce's testimony that the hospital's parking lot was not crowded at the time of the incident and that there were numerous empty parking spaces in which appellant could have pulled over. The timestamp on the recording indicates that the chase occurred at approximately 4:30 in the afternoon, and the recording also reflects that it was still light outside and that, although it was cloudy, it was not raining and visibility was good.

The jury convicted appellant of the offense of evading arrest. After appellant pleaded true to the allegations in two enhancement paragraphs, the trial court assessed his punishment at twenty-five years' confinement. This appeal followed.

## Sufficiency of the Evidence

In his sole issue, appellant contends that the State failed to present sufficient evidence that he intentionally fled from a peace officer.

4

## A. *Standard of Review*

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistences in the evidence in favor of the

verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also*

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record

supports conflicting inferences, we presume that the factfinder resolved the

conflicts in favor of the prosecution and therefore defer to that determination.").

Circumstantial evidence is as probative as direct evidence in establishing guilt, and

circumstantial evidence alone can be sufficient to establish guilt. *Sorrells v. State*,

343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Clayton*, 235 S.W.3d at

778). "Each fact need not point directly and independently to the guilt of the

appellant, as long as the cumulative force of all the incriminating circumstances is

sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.

Crim. App. 2007).

### B. Evading Arrest

To establish that appellant committed the offense of evading arrest, as

charged in the indictment, the State had to prove that appellant intentionally fled

from Deputy Luce, whom appellant knew to be a peace officer, while Luce was

lawfully attempting to detain appellant and that appellant used a motor vehicle

while in flight. *See* TEX. PENAL CODE ANN. § 38.04(a) (Vernon Supp. 2014) ("A

person commits an offense if he intentionally flees from a person he knows is a

peace officer or federal special investigator attempting lawfully to arrest or detain

6

him."); *Mims v. State*, 434 S.W.3d 265, 269 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

"A person commits a crime under section 38.04 only if he knows that a police officer is attempting to arrest him but nevertheless refuses to yield to a police show of authority." *Thompson v. State*, 426 S.W.3d 206, 209 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *Hobyl v. State*, 152 S.W.3d 624, 627 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd) ("An element of the offense of evading arrest or detention is that the accused must *know* that the person from whom he flees is a peace officer attempting to arrest or detain him.") (emphasis in original). Evidence that a police officer is asserting authority and attempting to arrest or detain an individual includes use of emergency lights and sirens, pointing to a driver to pull the vehicle over, and issuing verbal commands. *Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd). "'[F]leeing' is 'anything less than prompt compliance with an officer's direction to stop,' and 'fleeing slowly is still fleeing.'" *Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.) (quoting *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.), and *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.)); *see also Baines v. State*, 418 S.W.3d 663, 670 (Tex. App.—Texarkana 2010, pet. ref'd) ("The relevant inquiry is whether there was an attempt to flee or delay the detention."). Courts may consider speed,

distance, and duration of pursuit in determining whether a defendant intentionally fled, but "no particular speed, distance, or duration is required to show the requisite intent if other evidence establishes such intent." *Griego v. State*, 345 S.W.3d 742, 751 (Tex. App.—Amarillo 2011, no pet.); *Mayfield*, 219 S.W.3d at 541 ("The statute does not require high-speed fleeing, or even effectual fleeing. It requires only an attempt to get away from a known officer of the law.").

Here, Deputy Laird testified that he stood in front of the emergency entrance to the hospital in full uniform, with his gun drawn, and yelled commands for appellant to stop his vehicle. Appellant, however, drove past him and accelerated away from him. The DVD recording from Deputy Luce's vehicle depicts a low-speed chase lasting over two minutes throughout the hospital parking lot. Deputy Luce drove behind appellant for the entire chase, and his emergency lights—on during the entire chase—were visibly reflected in appellant's rear license plate. Deputy Luce turned on his siren approximately one minute into the chase, and appellant continued driving for another minute before finally coming to a stop after another deputy blocked the exit to the parking lot. During the chase, appellant drove over speed bumps, ignored stop signs, and drove through a red light to U-turn back into the parking lot. The parking lot was not busy at the time of the chase, and appellant passed numerous empty parking spaces into which he could have turned and parked.

8

In arguing that the State failed to present sufficient evidence that he intentionally fled from the officers, appellant points out that "the speed [of the chase] was low, the distance was short, and the duration was less than two-and-a-half minutes" and that appellant voluntarily stopped his vehicle once he saw the third deputy block the exit to the parking lot, arguing that it was at that point in time that he first became aware that the officers were attempting to detain him. Although speed, distance, and duration are factors to consider, no particular speed, distance, or duration is required to establish intent to flee. *See Griego*, 345 S.W.3d at 751; *Mayfield*, 219 S.W.3d at 541 (stating that section 38.04 "does not require high-speed fleeing, or even effectual fleeing"; instead, it only requires "an attempt to get away from a known officer of the law").

Although the chase here occurred at relatively low speeds throughout a hospital parking lot and lasted for approximately two minutes, Deputy Luce followed appellant in his patrol car with his emergency lights flashing—and with his siren on for at least a minute—throughout the parking lot; and Deputy Laird, in full uniform and with his weapon drawn, yelled at appellant to stop his vehicle. Appellant disregarded these commands and proceeded to drive through the parking lot, past stop signs, and through a red light without stopping for over two minutes, even though the parking lot was not crowded and there were numerous empty parking spaces into which appellant could have pulled. Appellant did not stop

9

until a third officer blocked the exit to the parking lot with his patrol car.[2] *See Lopez*, 415 S.W.3d at 497 ("'[F]leeing' is 'anything less than prompt compliance with an officer's direction to stop,' and 'fleeing slowly is still fleeing.'"). The chase occurred in the afternoon, during daylight hours, and with good visibility conditions.

Viewing the evidence in the light most favorable to the verdict, as we must, we conclude that a reasonable jury could have found that appellant knew the officers were attempting to detain him and that he intentionally fled from the officers. We hold that the State presented sufficient evidence to support appellant's conviction for evading arrest.

We overrule appellant's sole issue.

---

[2] As further evidence that he did not intend to flee, appellant points to the fact that he "shows his hands, by sticking them out of the vehicle, immediately before turning and coming to a stop in the hospital parking lot, which shows that he was now aware that the police were attempting to detain him." Appellant's complicity with the officers' commands once he finally stopped does not, however, negate his conduct during the preceding two-minute chase, in which he ignored the officers' attempts to stop his vehicle.

10

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).