FILED
*May 28, 2015*
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-14-00353-CR
5399510
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/22/2015 2:04:08 PM
JEFFREY D. KYLE
CLERK

# IN THE COURT OF APPEALS

# FOR THE THIRD SUPREME

# JUDICIAL DISTRICT OF TEXAS

# AUSTIN, TEXAS

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/22/2015 2:04:08 PM
JEFFREY D. KYLE
Clerk

## NO. 03-14-00353-CR

### KELLY KITA SHEFFIELD

v.

### THE STATE OF TEXAS

**Appeal from the 22nd Judicial District Court of Comal County, Texas
Trial Court Cause No. CR2011-475**

### BRIEF ON BEHALF OF APPELLANT,
### KELLY KITA SHEFFIELD

JOSEPH E. GARCIA III
200 N. Seguin Avenue
New Braunfels, Texas 78130
**ORAL ARGUMENT WAIVED**   TEL (830) 627-8868
FAX (830) 627-8683
joeg3@sbcglobal.net
SBN: 07636725
**ATTORNEY FOR APPELLANT**

## Identity of Parties and Counsel

Pursuant to TEX. R. APP. P. 38.1(a)(2011), the parties to this case are as follows:

(1)     KELLY KITA SHEFFIELD is the Appellant and Defendant in the trial court.

(2)     KELLY KITA SHEFFIELD was represented at trial and on appeal by Joseph E. Garcia, III, Attorney at Law, 200 N. Seguin Avenue, New Braunfels, TX 78130.

(3)     The State of Texas was represented by the Comal County District Attorney's Office through Assistant Criminal District Attorneys, Clayten H. Hearrell and Ryan V. Vickers, Comal County Courthouse Annex, 150 N. Seguin Avenue, Suite 307, New Braunfels, Texas 78130.

# Table of Contents

Identity of Parties and Counsel . . . . . . ii.

Table of Contents . . . . . . . iii.

Index of Authorities . . . . . . . iv, v.

Nature of the Case. . . . . . . . 1-2

Statement of the Case. . . . . . . . 3-7

Issues on Appeal. . . . . . . . . 8

**ISSUE #1: The evidence is legally insufficient to
support the jury's verdict that the Appellant was
guilty of evading arrest or detention with a vehicle
by someone she knew was a law enforcement officer.**

Argument and Authorities . . . . . . 8-13

**ISSUE #2: The evidence is legally insufficient to
support the jury's verdict that the Appellant's conduct
placed her child in imminent danger of death, bodily
injury, or physical or mental impairment.**

Argument and Authorities . . . . . . 14-15

Conclusion and Prayer . . . . . . . 15

Certificate of Service . . . . . . . 16

Certificate of Compliance. . . . . . . 16

# Index of Authorities

Page

## Statutes

Tex. Penal Code, Section 38.04(a) (b)(1)(B) .   .   .   .   8,9

Tex. Penal Code, Section 22.041(c).   .   .   .   .   14

Tex. Penal Code, Section 1.07(36)   .   .   .   .   .   9

Tex Code of Criminal Procedure, Art. 2.12  .   .   .   .   9

## State Cases

*Brooks v. State, 323 S.W.3d 893* (Tex.Crim.App. 2010)  .   .   . 8

*Devine v. State,* 786 S.W.2d 268 (Tex.Crim.App.1989).  .   .   16

*Duvall v. State,* 367 S.W.3d 509 (Tex. App.-Texarkana
2005, pet. ref'd).   .   .   .   .   .   11

*Garcia v. State,* 367 S.W.3d 683 (Tex.Crim.App.2012).  .   .   .16

*Hobyl v. State,* 152 S.W.3d 624 (Tex.App.—Houston [1st Dist.]
2004), pet. dism'd, improvidently granted, 193
S.W.3d 903 (Tex.Crim.App.2006) .   .   .   . 9

*Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781,
61 L.Ed.2d 560 (1979).  .   .   .   . 8,11,15

*Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App. 1997).  .   .   15

*Millslagle v. State,* 81 S.W.3d 895 (Tex.App.—Austin
2002, pet. ref'd).  .   .   .   .   .   16

*Redwine v. State,* 305 S.W.3d 360 (Tex.App.—Houston [14th Dist.] 2010, pet. ref'd)     .     .     .     .     10

*Rodriguez v. State,* 779 S.W.2d 301 (Tex.Crim. App. 1990).     .     9

## NATURE OF THE CASE

Appellant was indicted on September 14, 2011 for the felony offenses (1) tampering with physical evidence; (2) evading arrest with a vehicle; and (3) endangering a child.

On March 3, 2014, this case was called for trial, all parties announced ready, and a jury was empaneled and selected. After both parties presented their cases in chief the case was submitted to the jury on March 5, 2014. After deliberation the jury returned a verdict finding Appellant not guilty of the offense of tampering with physical evidence but guilty of evading arrest or detention with a vehicle and endangering a child.

Thereafter a punishment hearing was held on May 21, 2014 wherein Appellant's punishment on the evading charge was assessed at 2 years in years in a state felony facility, probated for 5 years and a fine of $1,500; 100 hours of community service restitution; plus other terms and conditions of probation deemed appropriate and approved by the Court. Punishment on the endangering charge was assessed at 2 years in a state jail facility, probated for 5 years and a fine of $1,500; 100 hours of community service restitution; plus other terms and conditions of probation deemed appropriate and approved by the Court. Both sentences as well as the terms and conditions of probation were ordered to run concurrently. (R.R. Vol 5, p. 61).

1

Appellant filed her notice of appeal on June 2, 2014.

This appeal challenges the sufficiency of the evidence to support the jury's guilty verdicts for the offenses of evading arrest or detention with a vehicle and endangering a child.

## STATEMENT OF THE CASE

On March 17, 2011, two Child Protective Services (hereinafter referred to as "CPS") investigators went to the Appellant's home to speak with the Appellant and to serve her with documents that purported to be court orders authorizing the removal of Appellant's two minor children from Appellant's home. CPS Investigator, Gina Bushey, testified that she also requested law enforcement "stand-by" presence in the event that the removal process deteriorated into threats, violence, or both. Ms. Bushey testified that the "stand-by" request was a standard procedure and request when removal of children is involved and CPS and the local police department and sheriff's office have working agreements relating to this process.

On this day, New Braunfels Police Department Det. David Cantu was assigned to accompany the CPS investigators and stand-by in the event his presence and participation was needed. The testimony of the CPS investigators and Det. Cantu indicated that the detective was in plain clothes, i.e. a blue polo shirt with a New Braunfels Police Department insignia on the chest, khaki pants, and an ID badge hanging around his neck. (R.R. Vol. 3, pgs. 48-49; & 83-84. Further, the testimony of the CPS investigators and the detective indicated that the detective was driving an unmarked, white pickup truck with an unmarked, white

3

camper shell covering the bed of the truck. (R.R. Vol. 3, pgs. 50-51; 83-85; Exhibit 42 @ 3:49:30-3:50:35).

After arriving at the Appellant's apartment, Investigator Bushey testified that she spoke with Appellant on the phone but the Appellant allegedly told the investigator that she (Appellant) was at work and not at home. Bushey testified that she believed that Appellant's vehicle was in the apartment parking area and while standing at Appellant's porch the investigator believed she could hear someone moving around inside the apartment. (R.R. Vol. 3, pgs. 17-21).

Bushey testified that when the Appellant said she was working in San Antonio, Bushey called San Antonio Police Department to conduct a "welfare check" of the business location where Appellant had allegedly indicated she was working. During this time, Bushey testified that she and Appellant continued to have phone contact and Bushey testified that she told Appellant the reason for the visit including that Bushey possessed a court order for removal of the children in Appellant's possession. Bushey estimated that this process went on for approximately one hour. (R.R. Vol. 3, pgs. 21-25). More importantly, during this entire time frame both Bushey and Det. Cantu testified that Cantu, who was stationed in the parking lot away from the Appellant's apartment, never came into visual or verbal contact with Appellant. (R.R. Vol. 3, pgs. 52, 68, 85, 87, 109, 110).

At some point Bushey determined that she would contact the management of the apartments to seek entry into Appellant's apartment. While both investigators and the detective were speaking with the apartment maintenance man, Bushey noticed a vehicle that she believed was Appellant's vehicle drive out of the apartment complex. Unable to see whether any children were in the vehicle, the investigators gave chase with the detective behind them. (R.R. Vol. 3, pgs. 27-34). During this pursuit, Bushey described the route that Appellant drove, the estimated speed of Appellant's vehicle and the alleged evasive action that Appellant took to make a U-turn to drive back to her apartment. (R.R. Vol. 3, pgs. 29-38).

When Appellant re-entered the apartment complex more police back-up was present and after Appellant parked her vehicle, Bushey eventually approached Appellant, who by now was in custody, and took pictures of Appellant's child who was properly seat-belted in the back seat and visibly happy and healthy looking. (R.R. Vol. 3, pgs. 62-65).

Det. Cantu testified that while the vehicle he was driving on this date had no markings whatsoever to identify it as a law enforcement vehicle, it did have emergency lights in the grille and on the back of the camper shell. (R.R. Vol. 3, pg. 84; Exhibit 42). And while Cantu testified that he wore his department issued ID badge around his neck during this incident, he did not appear to have his ID badge around his neck when he exited his vehicle to approach the Appellant when

5

she parked her vehicle upon return to the apartment complex. (Exhibit 42 @ 3:50:40). Det. Cantu testified that as he followed the CPS investigators who were following the Appellant's vehicle, he only came close enough to see Appellant in her vehicle for a split second while she made a U-turn. He then he turned his vehicle's emergency lights on as well as the vehicle siren, and he allegedly had his ID badge around his neck. (R.R. Vol. 3, pg. 92). From that moment on Appellant was driving back to the apartment complex with the detective behind her. Det. Cantu testified that there was no speeding by Appellant going away from the apartment complex or returning to the complex, nor any real evasive action by Appellant. Nor could the detective see whether Appellant did or did not stop at a stop sign after her U-turn and before entering the major roadway on the return to the apartment complex. (R.R. Vol. 3, pgs. 113-118).

On cross-examination, the detective testified that police department policy in effect at the time required that unmarked police vehicles should call in marked units to make stops and arrests and that while he called in for a marked unit or units to respond to this incident he was intent on making a stop of Appellant. (R.R. Vol. 3, pgs. 124-126). Det. Cantu further testified that upon the return to the apartment complex another police department unit was present, although a "stealth" unit" bearing markings that are not readily apparent or visible on first glance. (R.R. Vol. 3, pg. 153). Cantu followed the Appellant's unit into the

6

parking lot with the "stealth" unit behind them. The "stealth" unit driver used his in-car loudspeaker to order Appellant to stop which she did within seconds of that order and when she was approached on the driver's side by Det. Cantu in plain clothes, without his ID badge, and on the passenger side by the uniformed officer she opened her vehicle doors in compliance with the uniformed officer's commands. (Exhibit 42 @ 3:50:50-3:51:14). In response to the first questions by the officers as they took Appellant out of the vehicle, Appellant told them that she did not know that the white truck or the person in it was a law enforcement or peace officer. (R.R. Exhibit 42 @ 3:52:47-51).

**Issue #1: The evidence is legally insufficient to support the jury's verdict that the Appellant was evading the arrest or detention by a person *she knew* was a law enforcement officer**

## ARGUMENT AND AUTHORITIES

In challenging the legal sufficiency of the evidence to support a verdict of guilty to an indicted offense, the appellate court will review the evidence in the light most favorable to the verdict or finding of the jury to determine whether a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. ***Brooks v. State,*** 323 S.W.3d 893 (Tex.Crim.App.2010); ***Jackson v. Virginia,*** 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Texas Penal Code Sec. 38.04. **EVADING ARREST OR DETENTION** provides:

> (a)    A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him.
>
> (b)    An offense under this section is a Class A misdemeanor, except that the offense is:
>
> (1) A state jail felony if:
>
> . . . . . . . . . . .

8

(B) the actor uses a vehicle or watercraft while the actor is in flight and the actor has not been previously convicted under this section.

Texas Penal Code Sec. 1.07. **DEFINITIONS** provides:

In this code:

(36) "Peace officer" means a person elected, employed, or appointed as a peace officer under Article 2.12, Code of Criminal Procedure, Section 51.212 or 51.214, Education Code, or other law.

Texas Code of Criminal Procedure Art. 2.12. **WHO ARE PEACE OFFICERS,** provides in relevant part as follows:

(3)marshals or police officers of an incorporated city, town, or village, and those reserve municipal police officers who hold a permanent peace officer license issued under Chapter 1701, Occupation Code.

A defendant's knowledge that a peace officer is trying to arrest or detain her is an essential element of the offense of evading arrest. *Rodriguez v. State,* 779 S.W.2d 301, 302 (Tex.Crim.App. 1990); *Hobyl v. State,* 152 S.W.3d 624, 627 (Tex.App.—Houston [1st Dist] 2004), *pet. dism"d, improvidently granted,* 193 S.W.3d 903 (Tex.Crim.App.2006).

In this case the testimony is clear, direct, and uncontroverted that (1) prior to the time that Appellant returned, in her vehicle, to her apartment complex and was

confronted by a uniformed police officer, she had never come into contact with Det. Cantu; (2) Det. Cantu was in plain clothes and driving a completely unmarked, white pickup truck with a completely unmarked, white camper shell; and (3) despite Det. Cantu's testimony to the contrary, the video evidence indicates that he was not wearing his police department issued ID badge around his neck when he exited his truck at the apartment complex.

Furthermore, immediately after Appellant was taken from her vehicle by the arresting officers her first "res gestae" comment to the officers was that she did not know that the person in the white truck was a police officer.

Likewise, when a marked, though "stealth" police unit, followed Appellant and Det. Cantu into the apartment complex parking area and commanded Appellant to stop or pull over and indicated that it was a New Braunfels police officer making the command, she did just that.

In *Redwine v. State*, 305 S.W. 360, (Tex.App.—Houston [14th Dist.] 2010, pet. ref'd., Redwine was driving on a county road when he met a police car going in the opposite direction. Because the officers believed that Redwine was driving "too near the center of the undivided road", the officers turned around to follow him but they did not activate their lights or siren. Mr. Redwine made a written statement indicating that he wanted to avoid contact with the officers because he had a suspended drivers license. The officers found Redwine's unoccupied vehicle

and after shouting "Sheriff", Mr. Redwine eventually walked out of a nearby forest whereupon he was arrested for evading arrest. At trial Redwine was found guilty of evading arrest or detention with a vehicle and he appealed that verdict on the basis that the police made no show of authority until after he had already exited his vehicle and therefore the evidence was legally insufficient to prove that he knew, while in his vehicle, that police were attempting to arrest or detain him. The State argued that Redwine's written statement about avoiding contact with the police attested to his knowledge of the police pursuit.

The **Redwine** appeals court's analysis was that Redwine's statement that he was trying to avoid contact with the police was not evidence that he was trying to evade arrest. *"The gravamen of the offense is the evasion of an arrest, not the evasion of a police officer."* **Duvall v. State,** 367 S.W.3d 509, (Tex.App.— Texarkana 2012), pet. ref'd. 2012, citing **Jackson v. State,** 718 S.W.2d 724, 726 (Tex.Crim.App. 1986). The appeals court reasoned that the testimony regarding the show of authority was akin to the evidentiary sufficiency standards for identification testimony. The court wrote that courts have consistently held that an uncertain in-court identification of an accused as the perpetrator of a crime, standing alone, is insufficient to support a guilty verdict. In **Redwine**, one of the officers' "hesitant and admittedly unsure testimony was the only evidence suggesting that Redwine, while in his vehicle, failed to yield to a possible show of

authority by law enforcement. In the absence of other evidence, the *Redwine* appeals court noted, the jury could not translate the police officer's uncertain testimony into belief beyond a reasonable doubt. *Redwine v. State,* at 368.

In the instant case, Appellant contends that while the detective made what he believed to be a show of authority by engaging the lights in the grille of his unmarked vehicle and a siren, there was no clear, reasonable, or apparent indication that the person doing these things was a peace officer intent on arresting or detaining the Appellant. More to the point, the video evidence showing the events at the precise time that Appellant parked her vehicle at the apartment complex indicates that Det. Cantu's clothing and vehicle revealed a distinctly un-police-like show of authority. Unlike *Redwine* where there was no use of lights and siren but there was clear evidence that a marked police vehicle with uniformed officers were part of the incident in question, here there was the use of lights and a siren but no marked police vehicle nor uniformed peace officer to evidence the show of authority referred to and relied upon in the *Redwine* analysis. For those reasons it is entirely understandable that the Appellant did not recognize the white, unmarked pickup truck with the unmarked, white camper shell driven by a person in a blue polo shirt with khaki pants as a peace officer and a police vehicle until well after being taken into custody at the scene. Coupled with the fact that the car directly behind and following the Appellant's vehicle from the apartment complex

12

was also unmarked and civilian looking and occupied by two females who in turn are followed by the aforementioned white, unmarked pickup truck with the white, unmarked camper shell driven by a civilian appearing person argues for the conclusion that the Appellant did not know that a peace officer was involved in this incident.

For the above stated reasons, Appellant requests this Court to find that the evidence in this cause is legally insufficient to support the jury's verdict that the Appellant was guilty of evading arrest or detention with a motor vehicle.

**Issue #2: The evidence is legally insufficient to support the jury's verdict that Appellant is guilty of endangering a child by using a vehicle to evade arrest while the child was inside the vehicle.**

## ARGUMENT AND AUTHORITIES

Count III of the indictment in this cause alleged in relevant part as follows:

. . . . . on or about the 17th day of March, 2011, KELLY KITA SHEFFIELD, hereinafter styled Defendant, did then and there, intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engage in conduct that placed Lexi Sheffield, a child younger than 15 years, in imminent danger of death, bodily injury, or physical or mental impairment, to-wit: using a vehicle to evade arrest while the said Lexi Sheffield was inside the vehicle.

Texas Penal Code Sec. 22.041. **ABANDONING OR ENDANGERING CHILD** provides:

. . . . . . . . . . .

© *A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment.*

To the penal code provision of 22.041, the state's indictment added as an essential element of its case that the Appellant commited the alleged offense by evading arrest with a vehicle while her child was in said vehicle.

In addressing this issue, Appellant relies on the arguments and authorities set out under Issue No. 1 in this brief for the proposition that she did not evade an arrest or

14

detention with a vehicle as well as the following arguments and authorities in support of her position that the evidence is legally insufficient to support the jury's guilty verdict on the count of the indictment alleging endangering a child.

Evidence is insufficient to uphold a conviction when the record contains no evidence or merely a "modicum" of evidence, probative of an element of the offense. *Jackson v. Virginia*, 443 U.S. at 320, 99 S.Ct. 2781 ("A 'modicum' of evidence [cannot] by itself rationally support a conviction beyond a reasonable doubt.") Sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

CPS Investigator Bushey testified that when she saw Appellant's child in the vehicle after Appellant parked her vehicle in the apartment parking area, the child was "ok and appropriately fastened in her car seat" and that the investigator had no concerns for the child and there was no actual injury to the child. (R.R. Vol. 3, p. 42, lls. 19-25; p. 43, l. 1; p. 62, lls. 5-7; p. 65, lls. 6-25; p. 67, lls. 17-25 and p. 67). In addition, Det. Cantu testified that the Appellant was not speeding as he followed her on the way back to the apartments, (R.R. Vol. 3, p. 113, lls. 4-14), though he did suggest that Appellant was speeding when she drove away from the apartment's even as he indicated that he was following the CPS investigators who were following the Appellant and he could not state the speed of any of their vehicles. (R.R. Vol. 3, p.

15

113, l. 25; p. 114, lls. 1-15). Cantu also testified that Appellant drove according to traffic conditions and not erratically. (R.R. Vol. 3, p.115). Thus, despite the efforts of Bushey and Cantu to suggest that the Appellant's child was endangered by being in Appellant's vehicle on that date, the objective evidence before the jury was that the Appellant's child was not in imminent danger of death, bodily injury, or physical or impairment as defined by our courts. *Devine v. State*, 786 S.W.2d 268, 270 (Tex.Crim.App.1989); *Millslagle v. State*, 81 S.W.3d 895, 898 (Tex.App.-Austin 2002, pet. ref'd).

Based on the totality of the record developed at trial, Appellant urges that the evidence is insufficient to support the jury's verdict that Appellant's actions on March 17, 2011 placed her child in imminent danger of death, bodily, or physical or mental impairment by using a motor vehicle to evade arrest. *Garcia v. State*, 367 S.W.3d 683 (Tex.Crim.App. 2012).

For the foregoing reasons, Appellant urges and requests that this Court find that the evidence in this cause is legally insufficient to support the jury's verdict that the Appellant was guilty of endangering her child by evading an arrest with a vehicle as alleged in the indictment.

## Conclusion and Prayer

For all of the above stated reasons, Appellant urges and requests this Court to find that the evidence is legally insufficient to support the jury's verdict finding the Appellant guilty of the offenses of evading arrest or detention with a motor vehicle and endangering a child.

WHEREFORE PREMISES CONSIDERED, Appellant prays that this Honorable Court grant this appeal and reverse the jury verdict and render a judgment of acquittal in this cause.

Respectfully submitted,

Joseph E. Garcia, III
200 N. Seguin Avenue
New Braunfels, Texas 78130
TEL (830) 627-8868
FAX (830) 627-8683
Bar No. 07636725
joeg3@sbcglobal.net
ATTORNEY FOR APPELLANT

## Certificate of Service

I certify that on the 21st day of May, 2015, a true and correct copy of the above and foregoing Appellant's Brief on behalf of Appellant, Kelly Kita Sheffield, has been served upon the Comal County District Attorney's Office by electronic delivery.

Joseph E. Garcia, III
Attorney for Appellant

17

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document was prepared in MS Word and it does not exceed the allowable length for an appellate brief pursuant to Tex. R. App. Pro. 9.4, as amended and adopted on November 30, 2012, by Order of the Texas Court of Criminal Appeals. The approximate total of words in this document is 3,562.

Joseph E. Garcia, III