

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00241-CR

---

TRAVIS HEITH BATEMAN, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 50th District Court
Cottle County, Texas
Trial Court No. 2980, Honorable Jennifer Ann Habert, Presiding

---

July 12, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Travis Heith Bateman, Jr., Appellant, appeals his conviction for the third-degree felony offense of evading arrest or detention in a motor vehicle[1] and sentence of four years' incarceration in the Texas Department of Criminal Justice. By his appeal, Appellant contends that the trial court erred by admitting Appellant's video-recorded

---

[1] *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A).

statements in contravention of article 38.22 of the Texas Code of Criminal Procedure, and there was insufficient evidence to support the jury's guilty verdict. We affirm.

## BACKGROUND

In April of 2021, an indictment issued alleging that on February 5, 2021, Appellant, while using a vehicle, intentionally fled from Mark Box knowing that he was a peace officer who was attempting to lawfully arrest or detain him. In July of 2022, a trial on the merits was held.

The State's evidence established that on the evening of February 5, 2021, Cottle County Sheriff Mark Box received a call concerning a possible intoxicated driver of a motorcycle. The Sheriff headed in the direction indicated on the call in his marked patrol vehicle. The Sheriff encountered the motorcycle travelling in the opposite direction and matching the description he was given. The Sheriff immediately turned his vehicle around and activated his emergency lights and siren. As he did so, he noticed that there were two people on the motorcycle and the motorcycle's taillights were not functioning. As the Sheriff attempted to catch up to the cyclist, the cyclist accelerated. In the one-to-two-mile pursuit that ensued, the Sheriff topped off his speed at 112 miles per hour. Texas Department of Public Safety Trooper Cody MaGaha assisted in bringing the motorcycle to a stop. The Trooper's body and vehicle cameras captured the events and Appellant's statements the night of his arrest.

Appellant filed a motion to suppress statements he made at the scene. After a pretrial hearing, the trial court denied the motion to suppress and issued findings of fact and conclusions of law.

2

The Sheriff testified that once Appellant was detained and he had him in custody, he read Appellant his *Miranda*[2] rights. The Sheriff asked Appellant if he understood his rights and Appellant replied, "Yes, sir." The Trooper's body camera footage and in-car recordings were played for the jury. The first conversation between the Sheriff and Appellant was recorded on the side of the road and, a few minutes later, a second conversation was recorded in the patrol vehicle. During the first conversation, after the Sheriff informed Appellant of his *Miranda* rights, he asked Appellant why he fled. Appellant replied, "To tell you the truth, I got a laugh out of it." During the second conversation, Appellant told the Sheriff that the reason that he fled was because "he just wanted to see how hot his bike would run." The Sheriff understood this statement as an admission that Appellant was fleeing from him. Further, Appellant told the Sheriff that "[The pursuit] gave [Appellant] an adrenaline rush." The Sheriff testified that it is dangerous to drive more than 112 miles per hour with a passenger on a motorcycle. He opined that a motorcycle can be a deadly weapon when travelling at speeds of 112 miles per hour.

Appellant's girlfriend, Dorian Turner, was the passenger on Appellant's motorcycle when it was stopped by the Sheriff and the Trooper. Turner testified she had no idea how fast Appellant was driving. According to Turner, Appellant told the Sheriff "He was just seeing what [the motorcycle] had in it." Turner testified that she did not hear a siren and she did not hear either officer read Appellant his *Miranda* rights.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 498–99, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

A Cottle County jury found Appellant guilty of evading arrest or detention in a motor vehicle, and he was sentenced to four years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. Appellant timely filed his appeal.

In two issues on appeal, Appellant argues that the trial court erred in denying his motion to suppress and the evidence was insufficient to convict him.

## ANALYSIS

Sufficiency of the Evidence–Evading Arrest or Detention

We address Appellant's second issue first because it affords him greater relief. In this issue, Appellant challenges the sufficiency of the evidence to support his conviction.

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (Cochran, J., concurring). When reviewing all the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 & n.26. In our review, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See id.* at

899. As such, even if we would have resolved the conflicting evidence in a different way, we must defer to the jury's findings that are supported by sufficient evidence. *Id.* at 901–02 (discussing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)).

A person commits the offense of evading arrest or detention if he intentionally flees, in a vehicle, from a person that he knows is a peace officer lawfully attempting to arrest or detain him. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A); *Rodriguez v. State,* 799 S.W.2d 301, 302–03 (Tex. Crim. App. 1990) (en banc); *Guillory v. State*, 99 S.W.3d 735, 741 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). The intentionally fleeing party need only know that a peace officer was trying to lawfully arrest or detain him. *See Jackson v. State*, 718 S.W.2d 724, 726 (Tex. Crim. App. 1986). Proof of the attempt of an officer in a police vehicle to arrest or detain a person generally consists of the officer displaying authority by the use of overhead emergency lights and a siren. *Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd); *Stewart v. State*, No. 07-17-00007-CR, 2018 Tex. App. LEXIS 7792, at *6–7 (Tex. App.—Amarillo Sept. 25, 2018, no pet.) (mem. op., not designated for publication). "'Fleeing' is anything less than prompt compliance with an officer's direction to stop." *Hernandez Fernandez v. State,* No. 07-16-00420-CR, 2017 Tex. App. LEXIS 5315, at *5 (Tex. App.—Amarillo June 12, 2017, pet. ref'd) (mem. op., not designated for publication) (quoting *Horne v. State,* 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.)). When evaluating the sufficiency of the evidence to establish an appellant's intent for evading arrest or detention, the speed, distance, and duration of a pursuit are factors to be considered. *Avila v. State*, No. 07-19-00139-CR; 2020 Tex. App. LEXIS 4145, at *6 (Tex. App.—Amarillo May 27, 2020, no pet.) (mem. op., not designated for publication).

5

Here, Appellant contends that the evidence did not establish that he had the requisite intent to evade arrest. He argues the evidence establishes reasonable doubt as to whether Appellant "heard the sirens on Sheriff Box' (sic) vehicle, or if the sirens were even on, and whether or not Appellant saw any emergency lights until Trooper MaGaha was coming at Appellant head-on, at which time Appellant pulled over." He points to testimony from the Trooper that, during a pursuit, if a vehicle is moving fast and is far enough away, the driver may not be able to hear a siren. The Trooper could not recall if he heard the Sheriff's siren, and Turner testified that she did not hear a siren.

The Sheriff testified that he activated his overhead lights and siren when he encountered Appellant on a dark farm-to-market road and made a U-turn to follow him. After the Sheriff was behind Appellant, he was close enough to the motorcycle to see Appellant and his passenger. The Sheriff testified that he should have been visible in Appellant's rear-view and side-view mirrors. As the Sheriff followed Appellant, "the pipes became loud" and the motorcycle accelerated. The Sheriff pursued Appellant for one to two miles at a top speed of 112 miles per hour in a marked patrol car. Any doubt about whether Appellant intentionally fled from the Sheriff is resolved by Appellant's admissions recorded by an in-car recording after he was stopped. When the Sheriff asked Appellant what was going through his mind, Appellant replied, "I just wanted to see what the bike had in it." Appellant acknowledged that he was driving the speed limit when the Sheriff turned around and he recognized that it was the Sheriff behind him. According to Appellant, the decision to test his bike while being pursued "wasn't the right decision to make . . . . I did it just because, man, it felt good to me. It was the dang adrenaline rush . . . ."

6

Based on the evidence and reasonable inferences that may be drawn on this record, a rational factfinder could have reasonably found beyond a reasonable doubt that Appellant knew he was being pursued by a peace officer who was attempting to detain him, and that Appellant used a vehicle while in flight. *See* TEX. PENAL CODE ANN. § 38.04(a); *Hobyl v. State*, 152 S.W.3d 624, 627–28 (Tex. App.—Houston [1st Dist.] 2004), pet. dism'd, 193 S.W.3d 903 (2006). Accordingly, we overrule Appellant's challenge to the sufficiency of the evidence.

Denial of Motion to Suppress

In his first issue, Appellant contends that the trial court abused its discretion by overruling his motion to suppress and admitting the trooper's body camera recordings. He contends that there is no clear recitation of *Miranda* warnings on the recording at the time of his detention and subsequent arrest, prior to his interrogation by law enforcement. As such, Appellant's statements were improperly obtained and therefore inadmissible under article 38.22 of the Texas Code of Criminal Procedure.

In reviewing a challenge to the admissibility of an accused's oral statement, we apply a bifurcated standard of review. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc); *McCulley v. State,* 352 S.W.3d 107, 117 (Tex. App.—Fort Worth 2011, pet. ref'd). We give almost total deference to a trial court's rulings on mixed questions of law and fact if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman,* 955 S.W.2d at 89. But when the resolution of a mixed question of law and fact does not fall within this category, we apply a de novo standard of review to the trial court's ruling. *Id.*

Article 38.22 of the Texas Code of Criminal Procedure establishes procedural safeguards for securing the privilege against self-incrimination. *See* TEX. CRIM. PROC. CODE. ANN. art. 38.22. Among its requirements, it provides that no oral statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless (1) the statement was recorded and (2) prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *Id.* at § 3. The warning must inform an accused of the following rights:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time . . . .

TEX. CRIM. PROC. CODE. ANN. art. 38.22, § 2.

At issue here, was whether the Sheriff gave Appellant a clear recitation of *Miranda* warnings prior to his interrogation. At the suppression hearing, the State called the Sheriff to testify and played two recordings for the trial court.

In this case, the trial judge made specific findings that "*Miranda* warnings were given to [Appellant] in the first recording, and that they were a 'fully effective equivalent' of those prescribed by Article 38.22[.]" We find that the record and reasonable inferences from that record support this finding. On the first recording, Appellant and his passenger

8

were being handcuffed. Although portions of the audio are difficult to understand, the unmistakable cadence of the Sheriff reciting the *Miranda* warnings is evident on the recording. Further, when the Sheriff concludes the warnings, he asks Appellant if he understands his rights and Appellant replies, "Yes, sir."

The trial court found that the interview of Appellant in the in-car recording was a continuation of the Sheriff's earlier interview outside of the vehicle. In the second recording, the Sheriff clearly reminds Appellant, "I already read you your rights." While we agree with Appellant that this reminder is not a *Miranda* admonishment or a fully effective equivalent, there is no requirement to provide statutory warnings again before the Sheriff continues his interrogation in the circumstances here. *See Bible v. State,* 162 S.W.3d 234, 241–42 (Tex. Crim. App. 2005) (a subsequent interview may constitute a continuation of an earlier interview depending on (1) the passage of time, (2) whether the interrogation was conducted by a different person, (3) whether the interrogation related to a different offense, and (4) whether the officer asked the defendant if he had received any earlier warnings, whether he remembered those warnings, and whether he wished to waive or invoke them.). As relevant here, Appellant was given *Miranda* warnings by the Sheriff outside of the patrol vehicle and placed inside the patrol vehicle a few minutes later. The Sheriff continued to question Appellant about the same offense, and he reminded Appellant that he had received his warnings. A mere pause in questioning by law enforcement does not require additional *Miranda* warnings. *See Dunn v. State*, 721 S.W.2d 325, 338 (Tex. Crim. App. 1986) ("rewarning is not required where the interrogation is only a continuation about the same offense"); *LaSalle v. State,* 923 S.W.2d 819, 825 (Tex. App.—Amarillo 1996, pet. ref'd) (same).

9

We conclude that the trial court correctly determined that the *Miranda* warnings that were given in the first recording satisfy the requirements of article 38.22, section 3(a). Consequently, we cannot say that the trial court abused its discretion in admitting the recordings. We overrule issue one.

## CONCLUSION

Having overruled both of Appellant's issues on appeal, we affirm the judgment of the trial court.

Judy C. Parker
Justice

Do not publish.