**Opinion issued March 4, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00863-CR

———————————

**OSCAR RAMIREZ MARTINEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Case No. 1617262**

## MEMORANDUM OPINION

Following a bench trial, appellant Oscar Ramirez Martinez was convicted of the felony offense of evading arrest or detention using a motor vehicle and sentenced to five years' confinement, probated for three years. In his first point of error, appellant contends that he is entitled to file an out-of-time motion for new trial

because he was denied his right to counsel under the Sixth Amendment and Article I, Section 10 of the Texas Constitution when trial counsel abandoned him during the thirty-day period for filing a motion for new trial. In his second and third points of error, he challenges the sufficiency of the evidence to support his conviction. We deny appellant's request to abate the appeal and affirm the trial court's judgment.

## Background

In March 2019, appellant was charged by indictment with the felony offense of evading arrest or detention using a vehicle.[1] He waived his right to a jury trial and entered a plea of not guilty. At the bench trial, Houston Police Officer A. Shaikh testified for the State.

### A.    Bench Trial

On January 7, 2019, Officer Shaikh was assigned to night shift patrol duty. He was in a marked patrol car and wearing his police uniform. At the intersection of Bellaire and Fondren roads, Officer Sheikh noticed a white vehicle driving at an excessive rate of speed. He testified that the speed limit is about thirty miles an hour in that area, and the car was traveling at approximately sixty to seventy miles an hour. When the driver saw his patrol car, he slammed on the brakes.

Officer Shaikh testified that he observed the driver fail to signal while changing lanes. In response, he turned on his emergency lights and followed the

---

[1]    *See* TEX. PENAL CODE § 38.04(a).

vehicle to conduct a traffic stop. While at a red light behind the white car, Officer Shaikh honked his horn to get the driver's attention and ordered the driver to pull over into a nearby parking lot. When the driver failed to stop, Officer Shaikh turned on his emergency siren and began following the car.

Officer Shaikh testified that the driver accelerated and continued driving at an excessive rate of speed. Although there were well-lit parking lots on every block, the driver drove for 1.8 miles before pulling over into a gas station parking lot. The driver exited the vehicle and Officer Shaikh detained him. At trial, Officer Shaikh identified appellant as the driver.

In addition to Officer Shaikh's testimony, an excerpt from Officer Shaikh's body-worn camera video was admitted into evidence. On the video, Officer Shaikh can be heard asking appellant why he did not stop to which appellant replied "because—why you stop me for no reason?"

On cross-examination, Officer Shaikh testified that he requested a DWI unit at the scene although he did not smell any alcohol on appellant's breath. He testified that appellant also told him that he did not pull over immediately because he was scared. The defense did not call any witnesses.

After both sides rested, the court found appellant guilty of the charged offense and sentenced him to five years' confinement, probated for three years. The judgment of conviction was signed on October 7, 2019.

**B.      Post-Trial Proceedings**

Appellant filed his notice of appeal on October 8, 2019, and the trial court certified his right of appeal the next day. The district clerk's letter of assignment noted that the appeal was assigned to this Court and listed Charles Thompson, appellant's trial counsel, as the appellate attorney of record.

On April 2, 2020, Thompson filed a motion to withdraw as counsel. The motion stated, in part, that appellant had been detained in Harris County due to an immigration hold with regard to his conviction in this case. It stated that Thompson filed a notice of appeal with the understanding that appellant's family would hire an appellate attorney, but that no appellate attorney was hired and Thompson did not receive any fee for an appeal. The motion stated that Thompson contacted appellant's family who told him that appellant had been deported and, therefore, Thompson was unable to obtain appellant's signature for a voluntary withdrawal of the appeal. The motion listed appellant's last known address and stated that a copy of the motion and notification of appellant's right to object to the motion had been delivered to the address.

Appellant's brief was due on April 8, 2020. When appellant failed to file his brief, this Court abated the appeal and remanded to the trial court to conduct a hearing to determine whether appellant still wished to prosecute the appeal or had abandoned the appeal, and, if appellant wished to prosecute the appeal, whether good

cause existed to permit retained counsel, Thompson, to withdraw as appellant's counsel. The Court's July 7, 2020 abatement order stated that, if the trial court granted Thompson's motion to withdraw, it must determine whether to appoint substitute appellate counsel at no expense to appellant, but if the trial court did not permit Thompson to withdraw, it must provide a deadline by which Thompson must file the appellant's brief. The order also directed the trial court to make any other findings and recommendations that the trial court deemed appropriate—including whether appellant had been deported—and enter written findings of fact, conclusions of law, and recommendations as to these issues, separate and apart from any docket sheet notations.

After no hearing record was filed, on March 21, 2023, this Court continued the abatement. Following a hearing on March 24, 2023, the trial court filed a "Response to Court's Order After Abatement" concluding that appellant had abandoned his appeal, good cause existed to allow trial counsel to withdraw as appellant's counsel, and substitute appellate counsel should not be appointed. With the requested supplemental clerk's record and reporter's record filed, this Court reinstated the appeal and set the appeal for submission.

The record reflects that the trial court later appointed Angela Cameron as new appellate counsel. Appellant filed a motion requesting that the appeal be removed from the submission docket and a new briefing date be scheduled due to the trial

court's appointment of appellate counsel. On July 13, 2023, this Court abated the appeal again due to conflicting information and remanded to the trial court to conduct a hearing to determine, among other things, whether appellant had abandoned his appeal.

A hearing was held on August 8, 2023, and the trial court filed a "Response to Court's Order After Second Abatement." The response stated that new information had been presented to the trial court that "changes the opinion" concerning whether appellant had abandoned his appeal. The court concluded that appellant wished to prosecute his appeal and that "because **no action** was taken from the time trial counsel filed appellant's notice of appeal in 2019 (that bore trial counsel's signature block) to the time trial counsel's motion to withdraw was granted in 2023, the appellant should regain his full appellate rights, including the opportunity to file a motion for new trial." (Emphasis in original).[2] The abatement was lifted and the appeal was reinstated.

On August 10, 2023, appellant filed a motion asking the trial court to seal all exhibits tendered by appellant during the August 8, 2023 abatement hearing as they contained personal information but make the exhibits available to both parties. The trial court granted the motion and ordered all exhibits tendered during the August 8,

---

[2] Former Associate Judge Inger Chandler was the presiding judge at the first and second abatement hearings.

2023 hearing sealed with both parties to have access "to the exhibits made part of the appellate record."

Appellant filed his brief on January 12, 2024. The State filed its brief on March 25, 2024.

On April 9, 2024, appellant filed a motion to abate the appeal for an evidentiary hearing on allegedly lost or missing exhibits. Appellant contended that the trial court had considered certain emails and screenshot photos in determining that appellant had not abandoned his appeal and that he should have the opportunity to file an out-of-time motion for new trial. The State responded that the trial court's finding regarding of an out-of-time motion for new trial was outside the scope of this Court's remand order, no documents were offered or admitted into evidence, and the "phantom" documents were not part of the appellate record. Thus, there was no support for the trial court's determination that appellant was entitled to an out-of-time motion for new trial.

Appellant responded that the trial court considered the documents tendered during the August 8, 2023 hearing in reaching its decision and ordering those documents sealed and made part of the appellate record. Because the court reporter had not tendered these sealed documents, appellant asked this Court to abate the appeal and order the trial court to determine whether the documents had been lost. We abated the appeal and remanded to the trial court to determine whether, in

reaching its determination that appellant was entitled to an out-of-time motion for new trial, it had considered the emails and screenshot photo(s), if those emails and photos were the documents ordered sealed, and whether those documents under seal existed or had been lost or destroyed.

Following an abatement hearing,[3] the trial court entered findings of fact and conclusions of law on June 5, 2024. It found that the trial court, in reaching its determination that appellant was entitled to an out-of-time motion for new trial, had not considered the emails, screenshots, and appellant's timeline summary tendered during the August 8, 2024 hearing and later ordered sealed as part of the appellate record.[4] The abatement was lifted and the appeal was reinstated.

## Right to Counsel

In his first point of error, appellant contends that he is entitled to file an out-of-time motion for new trial because he was denied his right to counsel under the Sixth Amendment and Article I, Section 10 of the Texas Constitution when trial counsel abandoned him during the thirty-day period for filing a motion for new trial.

---

[3] Presiding Associate Judge Jessica Estrada granted the State's motion to quash the subpoena of former Associate Judge Inger Chandler.

[4] Appellant's attorney testified that she handed the exhibits to Judge Chandler at the August 8, 2023 abatement hearing and that Judge Chandler "observed" them. The trial court found that "observation alone is not proof enough that Judge Chandler considered them in her findings [at] the August 8, 2023 abatement hearing."

8

## A.     Standard of Review and Applicable Law

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to have counsel present at all "critical" stages of his prosecution. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009); *see* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); *see also* TEX. CONST. art. I, § 10 ("In all criminal prosecutions the accused . . . shall have the right of being heard by himself or counsel, or both . . . ."). One such critical stage is the period for filing a motion for new trial. *Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007). A criminal defendant has thirty days after the trial court imposes or suspends his sentence to file a motion for new trial. *See* TEX. R. APP. P. 21.4(a); *see also* TEX. R. APP. P. 21.2 (providing that motion for new trial is "prerequisite to presenting a point of error on appeal only when necessary to adduce facts not in the record"). If a defendant is deprived of counsel during this stage of his prosecution, his constitutional rights are violated. *Carnell v. State*, 535 S.W.3d 569, 572 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Cooks*, 240 S.W.3d at 911).

If the defendant was represented by counsel at trial, there is a rebuttable presumption that trial counsel continued to represent the defendant after trial, including during the critical motion-for-new-trial stage. *Cooks*, 240 S.W.3d at 911. There is a corresponding rebuttable presumption that, when no motion for new trial

9

on behalf of the defendant is filed, this decision was made because the defendant, with the benefit of counsel's advice and representation, considered and rejected that option. *Id.* n.6; *Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998); *Monakino v. State*, 535 S.W.3d 559, 563 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

If the defendant rebuts the presumption and shows that he was deprived of counsel for some but not all of the critical stage, then the deprivation was only partial and the defendant must show harm. *Cooks*, 240 S.W.3d at 911–12. To establish harm, and thus entitlement to an abatement of an appeal to file an out-of-time motion for new trial, the appellant must demonstrate a "facially plausible claim" that could have been developed in a motion for new trial. *See id.* at 912 (holding deprivation of counsel during motion-for-new-trial stage harmless beyond reasonable doubt because appellate counsel did not raise any facially plausible claims that could have been presented in motion for new trial). However, if the defendant was deprived of counsel for all of the critical stage, then the deprivation was total and harm is presumed. *Batiste v. State*, 888 S.W.2d 9, 14 (Tex. Crim. App. 1994) ("[W]ith some varieties of Sixth Amendment violation, such as the actual or constructive denial of counsel altogether at a critical stage of the criminal proceeding, . . . prejudice is presumed."). If the deprivation was harmful, the proper remedy is to abate the appeal and remand the case to the trial court to allow the defendant to file an out-of-time

motion for new trial. *See Ward v. State*, 740 S.W.2d 794, 800 (Tex. Crim. App. 1987); *Green v. State*, 264 S.W.3d 63, 69 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

## B.     Analysis

Appellant contends that he is entitled to file an out-of-time motion for new trial because he has rebutted the presumption of continued representation and demonstrated that he was abandoned and deprived of trial counsel during the entire period for filing a motion for new trial. He points to the trial court's finding, in its "Response to Court's Order After Second Abatement, that "because **no action** was taken from the time trial counsel filed appellant's notice of appeal in 2019 (that bore trial counsel's signature block) to the time trial counsel's motion to withdraw was granted in 2023, the appellant should regain his full appellate rights, including the opportunity to file a motion for new trial."

The State responds that the trial court's conclusion—that appellant should be allowed to file an out-of-time motion for new trial—does not follow from its finding that trial counsel took no action after filing notice of appeal. We agree. The discussion of filing a motion for new trial between counsel and his client must be presumed unless the record shows otherwise. *See Cooks*, 240 S.W.3d at 911 n.6 (noting that there is "rebuttable presumption" that, "when no motion for new trial is filed, it was because an appellant, with the benefit of counsel's representation, had

11

considered and rejected that option") (internal quotation marks omitted)); *Benson v. State*, 224 S.W.3d 485, 491 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Neither the trial court's finding nor anything else in the record excludes the possibility that trial counsel and appellant considered the option of filing a motion for new trial and decided not to do so.

Appellant further argues that "[t]rial counsel did nothing to prepare or investigate or try to do a motion for new trial" and "there is no evidence that [he] specifically told trial counsel not to file a motion for new trial." This argument misapprehends the burden of presenting sufficient evidence relating to a motion for new trial. It is the defendant who must show that trial counsel failed to investigate and prepare a motion for new trial. We note that trial counsel's affidavit is silent on the subject of a motion for new trial. *See Benson*, 224 S.W.3d at 497 (concluding defendant failed to rebut presumption that trial counsel continued to represent him during period for filing new trial motion where appellant did not allege that counsel failed to consider or discuss option of filing motion for new trial, that he refused to file one, or that appellant made such request) (citing *Burnett v. State*, 959 S.W.2d 652, 659 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd)).

Appellant also points to trial counsel's affidavit and testimony at the March 24, 2023 abatement hearing as evidence rebutting the presumption. He argues that trial counsel's affidavit testimony—"I was only contracted to represent [appellant]

through the conclusion of Jury Trial," "[m]y standard employment contract reflects that I would not be representing him past trial," and it was counsel's understanding that appellant wished to hire a different attorney for the appeal—indicates that trial counsel never intended to represent appellant in an appeal. He also points to trial counsel's testimony at the March 24, 2023 abatement hearing—"I advised the family in the courtroom, as well as my client, the need to retain appellate counsel," and "[i]t was my understanding that they were going to hire a different attorney to handle the appeal, as they were not pleased with the loss"—demonstrates that trial counsel did not, and never intended to, take action regarding an appeal of this matter. This argument is equally unavailing. Assuming appellant is correct that trial counsel did not intend to represent him on appeal, such an assumption says nothing about counsel's intentions regarding a motion for new trial, a matter that is distinct from an appeal.

However, even if appellant could establish that he was deprived of his right to representation at a critical stage of the proceedings, he would also have to show harm by alleging a "facially plausible" claim that he could have developed in a motion for new trial. *See Cooks*, 240 S.W.3d at 912; *Carnell*, 535 S.W.3d at 572–73; *Monakino*, 535 S.W.3d at 563.[5] To make this showing, appellant must identify the evidence or

---

[5] The record shows that trial counsel provided some assistance to appellant after his conviction, i.e., by filing a notice of appeal on appellant's behalf on October 8, 2019, one day after sentencing, signing the required certification of appellant's right of

information that would have been revealed by his new-trial motion and explain how this could have changed the outcome. *Id.*

Appellant asserts that the following issues would have been investigated for a motion for new trial: (1) reasons why he waived his right to a jury trial despite the immigration consequences of a conviction in this case; (2) the extent of any pretrial negotiations or offers from the State that could have settled the case and preserved his rights with respect to his immigration status; (3) whether trial counsel provided ineffective assistance of counsel regarding the potential immigration consequences for a conviction in this case; and (4) whether trial counsel provided ineffective assistance of counsel at the guilt/innocence and punishment phases by failing to offer any character evidence or argument for mitigation purposes.

However, appellant merely identifies these as areas of inquiry. He does not identify what evidence or information would result from any such inquiry and then be presented in a new trial motion, much less explain how this unidentified evidence or information could have altered the outcome at trial. While appellant need not

appeal on October 9, 2019, two days after sentencing, and moving to withdraw on May 21, 2020, well after the November 6, 2019 deadline for filing a motion for new trial had passed (and which the trial court granted on April 10, 2023). Therefore, harm will not be presumed. *See Carnell v. State*, 535 S.W.3d 569, 572 (Tex. App.— Houston [1st Dist.] 2017, no pet.) ("How the harm is analyzed depends on whether the defendant was deprived of counsel for all or only part of the critical stage. If the defendant was deprived of counsel for all of the critical stage, then the deprivation was total and harm is presumed.") (citing *Batiste v. State*, 888 S.W.2d 9, 14 (Tex. Crim. App. 1994)).

14

marshal all the evidence his proposed lines of inquiry would have revealed, he cannot show that he lost the opportunity to present facially plausible claims in a new-trial motion simply by identifying issues counsel could have investigated that potentially might have changed the result of the case. *See Cooks*, 240 S.W.3d at 912 (concluding defendant's assertions that lawyer was ineffective by failing to call named witness and conduct investigation did not establish facially plausible ineffective assistance claim because appellant did "not set out what evidence or information" would have been revealed "that reasonably could have changed the result of this case"); *Eaglin v. State*, ___ S.W.3d ___, 2024 WL 5126854, at *14 (Tex. App.—Houston [1st Dist.] Dec. 17, 2024, no pet. h.) (concluding even if defendant had established deprivation of counsel, he failed to show any harm; defendant's conclusory assertions that he would have explored in new-trial motion extent of trial counsel's investigation before advising him to reject plea offer, counsel's failure to present mitigation evidence, and contents of his trial counsel's file and what it might reveal regarding plea negotiations and case investigation, failed to identify what evidence or information would result from any such inquiry or explain how unidentified evidence or information could have altered outcome at trial).

We conclude that even if appellant could show he was deprived of the right to be represented by counsel during a critical stage of the proceedings, he has failed to

show harm by asserting a facially plausible claim that he could have developed in a motion for new trial. *See Cooks*, 240 S.W.3d at 912; *Eaglin*, 2024 WL 5126854, at *13–15 ("[T]he articulation of vague possibilities does not suffice to show the existence of facially plausible claims, and the existence of facially plausible claims is necessary to demonstrate harm or prejudice resulting from the deprivation of the right to counsel with respect to the preparation and presentation of a motion for new trial."). We overrule appellant's first point of error.[6]

## Sufficiency of the Evidence

In his second and third points of error, appellant argues that the evidence is insufficient to support his conviction of evading arrest or detention using a vehicle. He argues that the State failed to prove that he had intent to flee before he stopped his car and that he had knowledge that the attempted arrest or detention was lawful.

### A. Standard of Review

We review appellant's challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we examine all the evidence in the light most favorable to the verdict and determine whether a

---

[6] Because we conclude that appellant failed to rebut the presumption that he received continued, effective representation during the thirty-day period for filing a motion for trial, and that even if he had, he failed to demonstrate harm, we need not address the State's additional arguments that the trial court's finding that appellant's trial counsel had abandoned him was unauthorized and ill-reasoned.

16

rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19. Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Mottin v. State*, 634 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (citing *Jackson*, 443 U.S. at 314, 318 n.11, 320; *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009)).

The jury is the sole judge of the credibility of witnesses and the weight of their testimony, and our role on appeal is simply to ensure that the evidence reasonably supports the jury's verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *Galvan-Cerna v. State*, 509 S.W.3d 398, 403 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)). Inconsistencies in the evidence are resolved in favor of the verdict. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). "On appeal, the same standard of review is used for both circumstantial and direct evidence cases." *Hooper*, 214 S.W.3d at 13.

## B.     Applicable Law

Under Penal Code section 38.04, "[a] person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." TEX. PENAL CODE § 38.04(a). Relevant here, an offense under this section is a third-degree felony if the offender used a vehicle or watercraft to evade arrest. *Ex parte Carner*, 364 S.W.3d 896, 899 n.5 (Tex. Crim. App. 2012) ("[N]ow it is a third-degree felony if an offender used a vehicle or watercraft to evade arrest, regardless of whether he has a prior conviction for evading.") (citing TEX. PENAL CODE § 38.04(b)(2)); *Mims v. State*, 434 S.W.3d 265, 270 (Tex. App.— Houston [1st Dist.] 2014, no pet.)).

"A person commits a crime under [s]ection 38.04 only if he knows a police officer is attempting to arrest [or detain] him but nevertheless refuses to yield to a

18

police show of authority." *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *Hobyl v. State*, 152 S.W.3d 624, 627 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd) ("[T]he accused must *know* that the person from whom he flees is a peace officer attempting to arrest or detain him."). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. TEX. PENAL CODE § 6.03(b).

We may infer an actor's mental state from his actions and statements during and after the incident. *Griego v. State*, 345 S.W.3d 742, 753 (Tex. App.—Amarillo 2011, no pet.); *Muhammed v. State*, 331 S.W.3d 187, 193 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). "'[F]leeing' is anything less than prompt compliance with an officer's direction to stop." *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.). When evaluating the sufficiency of the evidence to establish a defendant's intent for evading arrest, or detention, the speed, distance, and duration of a pursuit are factors to be considered. *See Griego*, 345 S.W.3d at 751; *see also Thorn v. State*, 01-13-00906-CR, 2014 WL 3512811, at \*4 (Tex. App.—Houston [1st Dist.] July 15, 2014, pet. ref'd) (mem. op., not designated for publication); *Godfrey v. State*, No. 14-13-00100-CR, 2014 WL 309381, at \*2 (Tex. App.—Houston [14th Dist.] Jan. 28, 2014, no pet.) (mem. op., not designated for publication).

## C.      Analysis

In his second point of error, appellant contends that the evidence is insufficient to prove that he had intent to flee before he stopped the car. He argues that intent cannot be reasonable inferred because there is no evidence that Officer Shaikh made eye contact with appellant, Officer Shaikh and appellant exchanged glances through the side or rearview mirrors, appellant swerved in and out of traffic or onto a median or sidewalk, or caused any collisions, or that Officer Shaikh ever had the appellant's attention at all. He asserts that attention to personal safety and survival should not be confused with a criminal intent to flee.

Contrary to appellant's contention, the record contains sufficient evidence demonstrating that he was aware that Officer Shaikh was attempting to detain him while he fled. Officer Shaikh testified that while on night shift patrol duty, in a marked patrol car and wearing his police uniform, he observed a white vehicle going at an excessive rate of speed. He testified that the speed limit is about thirty miles an hour and that the car was traveling at approximately sixty to seventy miles an hour. Officer Shaikh testified that when the driver saw his patrol car, he slammed on the brakes.

When the driver failed to signal while changing lanes, Officer Shaikh turned on his emergency lights and immediately pulled behind the vehicle to conduct a traffic stop. While stopped at a red light, Officer Shaikh honked his horn to get the

20

driver's attention and ordered the driver to pull over into the nearby parking lot, but the driver failed to comply. Officer Shaikh turned on his emergency siren and, with lights and siren engaged, he began following the car. *See Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.) (concluding fact finder could have reasonably inferred defendant was aware officers were attempting to detain him, but defendant intended to flee, where pursuing officers had their lights and sirens activated while following defendant); *Hobyl*, 152 S.W.3d at 627 (holding evidence sufficient to support conviction where uniformed officer pursued defendant in marked patrol car with emergency lights and siren). However, rather than stopping, the driver of the white car accelerated and continued driving at an excessive rate of speed. *Hobyl*, 152 S.W.3d at 627 (holding evidence sufficient to support conviction where defendant increased speed at same time officer activated emergency lights and siren); *Rogers v. State*, 832 S.W.2d 442, 443–44 (Tex. App.—Austin 1992, no pet.) (finding evidence sufficient to support conviction where defendant sped up after seeing officer and officer pursued defendant with his overhead lights and siren activated); *see also Godfrey*, 2014 WL 309381, at *3 (holding evidence sufficient to support conviction where defendant sped away and crossed multiple lanes of traffic without signaling in response to officer's shows of authority); *Schmitt v. State*, No. 13-13-00132-CR, 2013 WL 6924171, at *4–5 (Tex. App.—Corpus Christi–Edinburg Dec. 30, 2013, pet. ref'd) (mem. op., not designated for publication)

(holding evidence sufficient where defendant "took off at a high rate of speed" when officer's patrol car was within fifty to one hundred feet of defendant's vehicle).

Officer Shaikh testified that there were well-lit parking lots on every block. *See, e.g.*, *Khan v. State*, 01-18-00327-CR, 2019 WL 346861, at *6 (Tex. App.—Houston [1st Dist.] Jan. 29, 2019, pet. ref'd) (mem. op., not designated for publication) (finding sufficient evidence to support defendant's conviction of evading arrest or detention in vehicle where evidence showed that, as officer followed defendant's car with his emergency lights activated, there were places for defendant to safely stop his car); *Schmitt*, 2013 WL 6924171, at *1, *5 (concluding evidence was sufficient to find defendant knew officer was trying to detain him where law enforcement officer testified defendant "had a safe place to stop" while being followed by officer in patrol car with activated emergency lights). He testified that the driver drove for 1.8 miles before pulling over into a gas station parking lot. *See Lopez*, 415 S.W.3d at 497 ("From the officers' testimony that their lights and siren were activated for 0.6 miles or approximately one and one-half minutes, the [fact finder] could [have] reasonably infer[red] that [defendant] was aware the officers were attempting to detain him but [he] intended to flee to the driveway of his house."); *Baines v. State*, 418 S.W.3d 663, 666, 670 (Tex. App.—Texarkana 2010, pet. ref'd) (noting "length and speed of chase are not determinative factors"

22

and holding evidence sufficient to support finding defendant intentionally fled despite "chase [occurring] . . . around a single city block" at low speed).

A nearly five-minute excerpt from Officer Shaikh's body-worn camera video from that night corroborated Officer Shaikh's testimony. On the recording, he can be heard ordering the white car to "pull over into the parking lot." After the traffic light turned green, Officer Shaikh honked his horn to get the driver's attention. When the car did not stop, the recording shows Officer Shaikh turning on his emergency siren and begin driving at a high rate of speed while relaying to dispatch information about his location and the car he was following. The video shows that, with lights and siren on, Shaikh continued in pursuit for another thirty seconds until the driver pulled into a parking lot. In response to Officer Shaikh asking why he did not stop, appellant can be heard replying, "Because—why you stop me for no reason?"

Appellant also challenges the sufficiency of the evidence showing that he had knowledge that the attempted arrest or detention was lawful. In light of the Court of Criminal Appeals's recent decision in *Nicholson v. State*, 682 S.W.3d 238 (Tex. Crim. App. 2024) holding that Section 38.04 does not require the State to prove that a defendant knew that the attempted arrest was lawful, appellant has withdrawn his argument in his third point of error. *See id.* at 243–45.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant

intentionally fled from a law enforcement officer who was attempting to arrest or detain him. *See Jackson*, 443 U.S. at 319. We hold that the evidence is legally sufficient to support appellant's conviction for evading arrest, or detention, with a vehicle. We overrule appellant's second and third points of error.

## Conclusion

We deny appellant's request to abate the appeal and affirm the trial court's judgment.

Kristin M. Guiney
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).